**Betty Jean HALE, Plaintiff,**

v.

**Mary VANCE, et al., Defendants.**

**No. C–3–01–151.**

United States District Court,
S.D. Ohio,
Western Division.

March 24, 2003.

James R. Greene, III, James R. Greene III & Associates, Dayton, OH, for plaintiff.

Felix John Gora, Rendigs Fry Kiely & Dennis LLP, Cincinnati, OH, Joseph M. Hegedus, Climaco, Climaco, Lefkowitz & Garofoli, Columbus, OH, for defendants.

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 14); JUDGMENT TO ENTER IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, Chief Judge.

In her Complaint (Doc. # 1), Plaintiff Betty Jean Hale raises five claims for relief. Her First Claim for Relief, stated

against Defendant Joseph A. McCrary, a Detective with the City of Trotwood Police Department, arises under 42 U.S.C. § 1983, and is premised on the allegation that Detective McCrary failed to investigate the conduct of other officers, and in so doing, deprived her of liberty without due process of law and equal protection of the laws, in violation of her rights under the Fourth, Fifth and Fourteenth Amendments. Her Second Claim for Relief, stated against Defendant Mary Vance, a Police Officer with the City of Trotwood Police Department, also arises under § 1983, and is premised on the allegation that Officer Vance used unreasonable and unnecessary force in detaining her, and in so doing, inflicted cruel and unusual punishment upon her and deprived her of equal protection under the laws, in violation of her rights under the Fifth, Eighth and Fourteenth Amendments. Her Third Claim for Relief states a claim for assault and battery against Officer Vance. Her Fourth Claim for Relief states a claim for intentional infliction of emotional distress against Officer Vance and Detective McCrary. Her Fifth Claim for Relief, stated against Defendants City of Trotwood, City of Trotwood Police Department, and Trotwood Police Chief Mike Etter, arises under § 1983, and is premised on the allegation that these Defendants failed to supervise Officer Vance and Detective McCrary in proper fashion, and in so doing, deprived her of her rights under the Fifth and Fourteenth Amendments.

The Defendants now move for summary judgment (*see* Doc. # 14), contending that the City of Trotwood Police Department is not *sui juris*, that the City of Trotwood and Chief Etter cannot be held liable for supervisory liability under § 1983, that certain of Hale's theories of relief are not actionable under § 1983, that there are no genuine issues of material fact, such that Officers Vance and Detective McCrary are entitled to judgment as a matter of law, and that, even if genuine issues of material fact existed as to certain aspects of Hale's claims, they are entitled to qualified immunity. The Court agrees, and will sustain the Motion.

### I. *Factual Background* [1]

Typically, when opposing summary judgment, a plaintiff may not rely upon the facts as alleged in her complaint to demonstrate the existence of genuine issues of material fact. However, in this instance, Hale has sworn to the truth and accuracy of her allegations in an attached affidavit. Accordingly, unless in conflict with her deposition, the Court will construe the factual allegations contained in the Complaint as true, for purposes of ruling on the Defendants' Motion.

To begin, the Court will note that this action follows Hale's acquittal in the Montgomery County Common Pleas Court on a charge of felonious assault of a police officer. The transcript of that trial has been filed with the Court (*see* Doc. # s 22–27), and will be designated in the Court's citations thereto as "Tr."

On or about February 20, 2001, just before midnight, about eight Trotwood Police Officers, including Officer Vance, arrived at Hale's residence in response to numerous emergency calls reporting that gun shots had been fired. (Compl. ¶ 11; Tr. at 68 (Vol. I), testimony of Officer Vance.) Drew Threats, a neighbor of Hale, had heard the shots about ten minutes before the officers' arrival. (Threats Aff., attached to Complaint, ¶¶ 6 & 7.)

---

1. For purposes of ruling on the Defendants' Motion for Summary Judgment, the Court will construe the facts, and all reasonable inferences drawn therefrom, in the light most favorable to the Plaintiff, who is the non-moving party.

Hale's son, Dennis Hale, an adult, also heard the shots. (D. Hale Depo. at 17.) The officers were informed by their dispatcher that the calls were coming from a house with a white utility vehicle in the driveway, and upon arrival in Hale's neighborhood, they spotted such a vehicle in her driveway. (Tr. at 68–69 (Vol.I), testimony of Officer Vance.) They had also been informed that there were four suspected shooters, three of whom had run from the suspect house. (*Id.* at 69, 76.) Upon arrival, the officers noticed "a lot" of shell casings on the ground in front of Hale's house. (*Id.* at 109.) Hale's son was ordered to exit her home with his hands up. (Compl.¶ 15.) After failing to get a response from the occupants of the house using the public address system in one of their squad cars, the officers communicated their order by leaving voice messages on Hale's telephone answering machine. (B.J. Hale Depo. at 30–31; Tr. at 77–78 (Vol.I), testimony of Officer Vance.)[2] Hale's son complied, and allowed himself to be taken into custody by the officers, several of whom had their guns drawn and trained on him as he came out of the house. (Compl.¶¶ 16, 18.)

Hale also exited her house and witnessed her son being ordered to his knees, with his hands raised in the air. (*Id.* ¶ 18; B.J. Hale Depo. at 32.) She repeatedly asked the officers "what's going on?," but did not receive an answer. (Compl.¶ 19.) At some point, the officers focused their attention on her, pointing their guns at her, shouting at her to raise her hands above her head, and ultimately subduing and arresting her. (Compl. ¶¶ 20, 22, 23; B.J. Hale Depo. at 32.) In subduing her, Officer Vance placed Hale's arm behind her back and held her in a choke-hold, referred to in police parlance as the "escort position." (Compl. ¶ 23; B.J. Hale Depo. at 52; Tr. at 489 (Vol.III), testimony of Hale.)

At the time she placed Hale in an escort position, Officer Vance had not observed Hale committing a criminal act. (Tr. at 112 (Vol.I), testimony of Officer Vance.) Furthermore, the officers had no knowledge at that point of whether Hale had been involved in the reported shooting of weapons, and she did not observe any object of any type in her hands. (*Id.* at 112, 122.) Officer Vance's stated purpose for detaining Hale at that time was to restrict her ability to reach for any weapon she might have had in her pockets, for the officer's own protection and that of the neighbors who had gathered. (*Id.* at 113–114, 121, 147.) To effectuate the detention of Hale, Officer Vance holstered her weapon, while Officer Schaeffer covered her from behind. (*Id.* at 122, 124.)

While Hale was being detained by Officer Vance, Officer Schaeffer, who is not named as a Defendant in this case, approached the two of them and kicked Hale's legs out from under her, the force of which knocked all three of them (Hale and the two officers) to the ground. (Compl. ¶ 23; B.J. Hale Depo. at 53–54; Tr. at 489 (Vol.III), testimony of Hale.) After they fell to the ground, Hale stated that she was hurt, a claim which Officer Vance discounted. (B.J. Hale Depo. at 62.) Officer Vance then assisted Hale to her knees, but kept her subdued by placing her (Officer Vance's) knee in her back while she handcuffed her. (*Id.* at 63–64.) As Officer Vance was doing this, Officer

---

**2.** There is an issue as to whether the officers had identified Dennis Hale as a suspect prior to their having detained him. (*See* D. Hale Depo. at 22; B.J. Hale Depo. at 31; Tr. at 78–79 (Vol.I), testimony of Officer Vance.) This issue is not material, however, because the means used to identify and detain her son, and the reasonableness of their having done so, provide no basis for Hale's cause of action.

Schaeffer exclaimed that Hale had hit her in the eye and that she should "kick that black bitch," to which other unidentified officers responded, "go ahead and kick her." (Compl. ¶¶ 24, 25; B.J. Hale Depo. at 55, 63.)

At some point during Hale's detention, her son was released from custody. (Compl.¶ 27.) After handcuffing Hale, Officer Vance notified another officer that Hale was claiming that she was hurt, so the officers thereafter arranged for Hale to be taken to a hospital by paramedics to treat the pain in her leg, which had arisen when she was knocked to the ground by Officer Schaeffer. (Compl. ¶¶ 26; B.J. Hale Depo. at 64–66.) Hale was released from the hospital and transported to the Montgomery County Jail, where she spent the night after being booked on a charge of fourth degree felonious assault of a police officer, Officer Schaeffer, specifically (but not Officer Vance). (Compl.¶ 28.) At no point in time had Hale attempted to obstruct the officers' duties vis-a-vis her son. (Tr. at 489–90 (Vol.III), testimony of Hale.) It has been represented without opposition that a jury found her not guilty on her felonious assault charge. (Doc. # 31 at 5.)

## II. *Standards Governing Motions for Summary Judgment*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106

S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,*

889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Sys., Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ..."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

### III. *Analysis*

■ The Court will review the facts concerning the individual claims in turn. 42 U.S.C. § 1983 provides a civil cause of action to any citizen of the United States against any person who, under color of state law, deprives the citizen of "any rights, privileges, or immunities secured by the Constitution and laws of the United States." *See Christy v. Randlett,* 932 F.2d 502, 504 (6th Cir.1991) (citations omitted). In order to succeed on a § 1983 claim, a plaintiff must prove two elements: (1) that he was deprived of a right secured by the Federal Constitution or laws of the United States; and (2) that he was subjected to this deprivation by a person acting under the color of state law. *See Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994). "By its terms, § 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert,* 205 F.3d 303, 310 (6th Cir.2000) (citing *Oklahoma*

*City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)).

█ In her First Claim for Relief, Hale avers that Detective McCrary had "a duty to properly investigate" the actions of Officer Vance in relation to her arrest and detainment (Compl.¶ 37), and that because the Detective failed to so investigate, Hale was deprived of her liberty without due process of law and of her equal protection under the law, in violation of rights secured to her under the Fourth, Fifth and Fourteenth Amendments. (*Id.* ¶ 38.) Summary Judgment is appropriate for this claim. There is no dispute that Detective McCrary was not at the scene of Hale's arrest. (Tr. at 389 (Vol.II), testimony of Detective McCrary.) As noted above, § 1983 does not create rights of its own. In order for a plaintiff to prevail on such a claim, she must demonstrate that the defendant violated a right secured by the Constitution or some other federal law. Neither the Fourth, Fifth or Fourteenth Amendments to the Constitution nor any federal law of which this Court is aware imposes a duty upon a police detective to investigate criminal activity or the actions of police officers responding to reports of suspected criminal activity. Such a duty

may exist as a matter of state law or police department policy (*e.g.,* Tr. at 388 (Vol.II), testimony of Detective McCrary), but that by itself is not enough to invoke § 1983. Furthermore, while it is conceivable in the abstract that a defendant's failure to perform a duty imposed by state law or department policy might also give rise to a violation of due process or equal protection rights, that is so not because of the failure to perform the duty imposed by state law or department policy, but because the actions or inactions of the defendant are of such magnitude that they independently constitute violations of constitutional rights, irrespective of the breached duty. Thus, the question posed is whether the facts, construed in a light most favorable to Hale, inclusive of all favorable inferences which can be drawn therefrom, demonstrate that Detective McCrary violated Hale's rights to due process and equal protection under the law. In her Memorandum in Opposition (Doc. # 31), Hale does not make the first argument as to how Detective McCrary can be held liable for any such constitutional infraction.[3] Accordingly, as to her First Claim for Relief, the Defendants' Motion for Summary Judgment shall be sustained.[4]

---

**3.** Defendants' arguments that McCrary cannot be held individually liable because he was within the scope of his employment, and that he is otherwise entitled to immunity under Ohio Rev.Code § 2744.03, are not well taken. It is possible to be held individually liable for acts undertaken within the scope of one's *apparent* official capacity, *see Hafer v. Melo,* 502 U.S. 21, 25–27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), and the governmental immunity available under § 2744.03 does not extend to allegations of violations of rights secured by federal statutes or the United States Constitution. *See* Ohio Rev.Code § 2744.09(E).

**4.** Detective McCrary testified in the state criminal trial that one duty of a detective is to investigate criminal activity, but that fact is obvious to anyone with only a slight apprecia-

tion for the job of police detective. Though not stated by Hale, her theory seems to be that Detective McCrary performed his job poorly in investigating the facts underlying her arrest, but certainly it cannot be suggested, as a matter of federal or constitutional law, that police detectives must investigate and approve each and every arrest made by field officers before the arrested individual can be booked into jail, or prosecuted in a court of law, and the fact that Hale was acquitted in the Common Pleas Court for the charge for which she was arrested does not give rise to a reasonable inference that she was wrongly arrested, i.e., without probable cause (which is not something that Hale has claimed in any event). At best, the facts tend to demonstrate that the County Prosecutor took on a "weak" case, without much support from the City of Trotwood Police Department,

In her Second Claim for Relief, Hale alleges that Officer Vance used excessive force in detaining and arresting her, thereby violating her rights under the Fifth, Eighth and Fourteenth Amendments. (Compl.¶44.) As an initial matter, the Court notes that the Fifth and Eighth Amendments are not relevant to an excessive force claim. *See Graham v. Connor,* 490 U.S. 386, 392–93, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding that excessive force claims are to be treated under the Fourth Amendment); *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (noting that Eighth Amendment protection against cruel and unusual punishment only extends after an individual has been incarcerated following a criminal conviction). However, because the protections of the Fourth Amendment apply to the States via the Fourteenth Amendment, *see Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), Hale's Second Claim can be read to state a claim upon which relief can be granted. Be that as it may, the Court finds that Officer Vance is entitled to qualified immunity, and, hence, summary judgment, on this claim.

 Whether an officer's use of force is excessive must be analyzed under the Fourth Amendment's "reasonableness" standard. *See Graham,* 490 U.S. at 395, 109 S.Ct. 1865. "[S]ome degree of physical coercion or threat thereof" is constitutionally acceptable when police officers are effecting a stop or full arrest. *Id.* at 396, 109 S.Ct. 1865. Importantly, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal quotation and citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make

split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S.Ct. 1865.

Construing the facts in a light most favorable to Hale, the Court agrees with her that a genuine issue of material fact exists as to whether Officer Vance used excessive force in subduing and detaining her on the night of February 20, 2001. In Officer Vance's favor, Hale has not challenged the fact that she (Officer Vance) was, along with other officers, responding to multiple reports of gun shots shortly before midnight on the night in question, or the fact that multiple suspects had been reported to be in the vicinity, if not exactly in the Plaintiff's house. Likewise, Hale has not adduced evidence contradicting the Defendants' contentions that the responding officers deemed the reports of gun shots to have merit, once they arrived at Hale's house, given the abundance of shell casings found on the ground in front of her house. Finally, Hale has not adduced facts calling into doubt the Defendants' claims that her neighbors gathered in the vicinity as the events unfolded. In light of these uncontested facts, it can hardly be questioned that it was reasonable for the officers to take precautionary measures, for their safety and the safety of the neighbors, upon confronting Hale and her son, when those individuals exited the house. Moreover, Hale has raised no claim that she was unconstitutionally seized in the first instance, i.e., that Officer Vance lacked a reasonable suspicion to detain her for brief investigative purposes. *See Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The sole basis for Hale's Second Claim for Relief is her allegation that Officer Vance used ex-

---

but that itself is irrelevant to the merits of Hale's § 1983 claim.

cessive force in effectuating that detention, not that the detention itself was illegal.

■ In *Terry,* the Supreme Court held that

> where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

392 U.S. at 30, 88 S.Ct. 1868. Arguably, Officer Vance had a right under *Terry* to "stop and frisk" Hale on the night in question. While the facts demonstrate that Officer Vance did not have probable cause to actually arrest Hale at the beginning of their encounter, given the lack of evidence tying her in particular to the reported shootings, she had ample evidence that criminal activity was afoot, or had recently been afoot, and that Hale's house was a suspected sanctuary for at least one of the suspects, who, for all Officer Vance could have known, might have been Hale herself. Those facts are enough to justify a brief detention under *Terry,* and without actually citing to *Terry* and its progeny, this appears to be the point raised by the Defendants in their Motion, although they phrase it within the context of a qualified immunity argument. (Doc. # 14 at 18–19.)

However, the Court need not actually address the *Terry* issue, because the issue actually raised by Hale, as noted, is whether Officer Vance used excessive force in effectuating her detention, not whether the detention was warranted in the first instance. For her part, Hale focuses equally on what came after her initial detention by Officer Vance. She emphasizes that almost immediately after Officer Vance detained her, Officer Schaeffer approached her and kicked her legs out from under her, knocking all three individuals to the ground and hurting her (Hale's) leg in the process. (Doc. # 31 at 3; B.J. Hale Depo. at 53–54; Tr. at 489 (Vol.III), testimony of Hale.) Construing the facts in a light most favorable to Hale, the Court must accept that this is in fact what transpired. The Court also must accept as true Hale's sworn allegation that Officer Schaeffer thereafter stated, "I should kick that black bitch." (B.J. Hale Depo. at 63.) If indeed true, these facts are disturbing. Be that as it may, they are the product of the actions of Officer Schaeffer, who is not named in the Complaint, and there is no basis for imputing either the sweeping kick which ultimately knocked Hale to the ground or Officer Schaeffer's offensive comment to Officer Vance.

This is not to say that the force administered by Officer Vance alone was not excessive in its own right. While it may appear at first glance that Officer Vance did no more than officers are trained to do under like circumstances, when she told Hale to raise her hands above her head, and subdued her by placing one of her arms behind her back and holding her in a choke hold, this procedure of placing an individual in the "escort position," while no doubt reasonable in the context of an actual arrest, supported by probable cause, might be found by reasonable minds to be unreasonable in the context of a stop governed by *Terry,* at least under the facts of this case. For these reasons, the Court finds that when the facts are construed in

a light most favorable to Hale, a genuine issue of material fact exists on the question of whether Officer Vance used excessive force in detaining her.

■ Despite the foregoing discussion, Hale's Second Claim for Relief cannot survive summary judgment. Even if reasonable minds may disagree about whether Officer Vance used excessive force in detaining Hale, that officer is entitled to qualified immunity. In the interest of protecting public officers in the course of performing their discretionary duties from unduly onerous lawsuits under § 1983, the Supreme Court has recognized "qualified immunity" for such officers, "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Thus, in order for a public officer to be held accountable, the right she is charged with violating must be clearly established, and be one of which a reasonable officer in her position would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Even where a genuine issue of material fact exists as to whether an officer used excessive force, that does not prevent the Court from finding, as a matter of law, that the officer acted reasonably in light of the state of the law as it was then understood. *See Saucier v. Katz*, 533 U.S. 194, 207–09, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Thus, while reasonableness in the Fourth Amendment context will frequently be left to the trier of fact to determine, in the narrower qualified immunity context, the question of reasonableness "ordinarily should be decided by the court long before trial." *Hunter*, 502 U.S. at 228, 112 S.Ct. 534; *see also Saucier*, 533 U.S. at 200–01, 121 S.Ct. 2151. The distinction in the latter context is that the analysis turns on the legal issue of whether the law surrounding the particularly defined right allegedly violated was "clearly established." To lose the protection of qualified immunity, "in the light of pre-existing law[,] the unlawfulness [of the officer's actions] must be apparent." *Gardenhire*, 205 F.3d at 311.

The Supreme Court has established a two-part analysis for assessing whether a public official is entitled to qualified immunity. *See Crockett v. Cumberland College*, 316 F.3d 571, 579 (6th Cir.2003). *First*, the Court must inquire whether the facts alleged, when viewed in the light most favorable to the party asserting the injury, show that the public official's conduct violated a constitutional right. *See id. Second*, if the denial of a constitutional right is demonstrated, the Court must assess whether that right was clearly established at the time of the alleged violation. *See id.* The Court has already completed the first step of the analysis, having found that a trier of fact could find that Officer Vance violated Hale's constitutional right to be free from excessive force. It is the second step of the analysis which remains for further discussion.

In *Saucier*, the Supreme Court examined the contours of the qualified immunity defense with respect to claims of excessive force. In that case, the plaintiff had alleged that a military officer had used excessive force to detain him at a speaking event featuring then Vice President Gore. 533 U.S. at 197, 208, 121 S.Ct. 2151. "At about the time Vice President Gore began speaking, respondent removed [a] banner from his jacket, started to unfold it, and walked toward the fence and speakers' platform." *Id.* at 198, 121 S.Ct. 2151. It was alleged that the military officer then rushed the § 1983 plaintiff away from the area in which the Vice President was speaking,

"half-walking, half-dragging him, with his feet 'barely touching the ground,'" and then violently shoved him into a transport van. *Id.* Conceding that reasonable minds might disagree on whether the force used was excessive under the circumstances, the Supreme Court nonetheless concluded that under that set of facts, the law was not settled as to whether it was excessive, and, therefore, that a reasonable officer, acting in the heat of the moment, might have found it reasonable to act as he did. *Id.* at 207–08, 121 S.Ct. 2151. As stated by Justice Kennedy:

[The officer] did not know the full extent of the threat [the detainee] posed or how many other persons there might be who, in concert with [him], posed a threat to the security of the Vice President. There were other potential protestors in the crowd, and at least one other individual was arrested and placed into the van with [him]. In carrying out the detention, as it has been assumed the officers had the right to do, [the officer] was required to recognize the necessity to protect the Vice President by securing [the detainee] and restoring order to the scene. It cannot be said there was a clearly established rule that would prohibit using the force [the officer] did to place [the detainee] into the van to accomplish these objectives.

*Id.* at 208, 121 S.Ct. 2151.

▮▮▮ *Saucier* controls the outcome of this case. The undisputed facts demonstrate that on the night of February 20, 2001, Officer Vance, along with other offi-cers, was responding to multiple reports of gun shots, that it was almost midnight and that multiple suspects had been reported to be in the vicinity if not exactly in the Plaintiff's house. Upon their arrival at Hale's house, the officers concluded that the reports of gun shots appeared meritorious, based on their observations of shell casings on the ground in front of her house. Furthermore, although she alleges that she did not attempt to obstruct the officers' official business as it related to their detention and questioning of her son, Hale raises no claim that Officer Vance did not have the right, under *Terry*, to briefly detain her when she first exited her house, to make sure she was not armed, or that the officers did not have probable cause to arrest her for assaulting a police officer after her altercation with both Officer Vance and Officer Schaeffer escalated into a more physical encounter. With regard to this set of facts, the Court cannot say that it was clearly established as of February 20, 2001, that a police officer may not detain an individual exiting a house reportedly providing sanctuary for at least one suspect in an investigation of gun shots by placing her arm behind her back and holding her in a choke hold, or that such conduct becomes unconstitutional if *another* officer takes it upon herself to kick the detained individual's legs out from under her while she is still being held in the "escort position" by the first officer.[5] For this reason, on this claim, too, summary judgment must be sustained.[6]

---

5. It is a plaintiff's burden in this Court, in opposing a legitimate qualified immunity defense, to point to cases of the Supreme Court and the Sixth Circuit demonstrating that her rights purportedly violated were clearly established, in light of the facts and circumstances of her particular case. The Plaintiff in this case has not pointed to any such cases. She cannot, because such cases do not exist.

6. The Court will note once again, however, that it is no defense to individual liability that an officer appeared to be acting within her official capacity. *See Hafer,* 502 U.S. at 25–27, 112 S.Ct. 358. Thus, to the extent the Defendants assert that Officer Vance cannot be sued in her individual capacity, their argument is not well taken. (*See* Doc. # 14 at 16.)

In her Third Claim for Relief, Hale states a claim for assault and battery against Officer Vance, based on the same facts underlying her § 1983 claim against that officer for excessive force. "An assault in tort is the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." *Vandiver v. Morgan Adhesive Co.*, 126 Ohio App.3d 634, 710 N.E.2d 1219, 1221 (1998) (citation and internal quotation omitted). A battery in tort goes one step farther, and is "an intentional, nonconsensual touching." *Watkins v. Cleveland Clinic Found.*, 130 Ohio App.3d 262, 719 N.E.2d 1052, 1064 (1998). Had Officer Vance not been a police officer acting within the scope of her employment, Hale's claim for assault and battery would have merit,[7] but of course that is not the case, and, as a police officer effectuating a stop, Officer Vance was privileged to make physical contact with Hale in the manner she did. Furthermore, Officer Vance is entitled to governmental immunity unless Hale can demonstrate that the officer acted "manifestly outside the scope of [her] employment or official responsibilities," acted "with malicious purpose, in bad faith, or in a wanton and reckless manner," or in a manner for which liability can be imposed under some other law of the State of Ohio. *See* Ohio Rev.Code § 2744.03(A)(6)(a)-(c). Officer Vance's actions were taken within the scope of her employment and no statute in Ohio imposes liability on her for such conduct. Moreover, given the Court's conclusion in its discussion of qualified immunity that Officer Vance's conduct was not unreasonable in light of existing law, it would be inconsistent to find that a reasonable inference could be drawn that her actions were, under the circumstances, malicious or undertaken in bad faith or in a wanton and reckless manner. Because there are no genuine issues of material fact concerning Officer Vance's conduct relating to her detention of Hale, no reasonable jury could find her liable for the torts of assault or battery. Summary judgment will therefore be sustained on her Third Claim for Relief.

In her Fourth Claim for Relief, Hale states a claim for intentional infliction of emotional distress against both Detective McCrary and Officer Vance. Such a claim can lie where "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983) (citing Restatement (Second) of Torts § 46(1) (1965)). The Ohio Supreme Court has stated that "liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!',"and "[t]here is no occasion for the law to intervene in every case where some one's [sic] feelings are hurt." *Id.*

The Court has no doubt that the acts of being detained and arrested are uncomfortable ones, regardless of one's culpability for the criminal activity or suspected criminal activity on which the detention and arrest are based. However,

---

7. Though they constitute separate torts, Hale, as plaintiffs frequently do, phrases her assault and battery claims as a single claim.

where the detention and arrest are lawful, they cannot give rise to a subsequent civil action against the detaining or arresting officer for inflicting emotional distress. Absent a showing, at minimum, that her detention or arrest was both unlawful and undertaken in bad faith or the like, this Court does not believe the courts of Ohio would recognize a claim for intentional infliction of emotional distress where the underlying cause of the emotional distress was the plaintiff's detention and arrest, even where she was ultimately acquitted on the charge for which she was arrested. Accordingly, summary judgment will be sustained on this claim.

 In her Fifth Claim for Relief, Hale seeks to hold the City of Trotwood, the City of Trotwood Police Department and Chief Etter liable for failing to supervise, in proper fashion, the conduct of Officer Vance and Detective McCrary, alleging that their failure to do so resulted in the deprivation of her "constitutional and statutory" rights guaranteed by the Fifth and Fourteenth Amendments. (Compl.¶ 64.) For several reasons, summary judgment must also be granted on this claim. *First,* the City of Trotwood Police Department, being a mere arm of the City of Trotwood, is not its own entity, and is not capable of being sued (i.e., it is not *sui juris* ). *See Jones v. Marcum,* 197 F.Supp.2d 991, 997 (S.D.Ohio 2002); *Lindow v. N. Royalton,* 104 Ohio App.3d 152, 661 N.E.2d 253, 258 (1995). *Second,* because neither the Constitution nor any federal statute of which this Court is aware imposes a duty upon a municipality or its Chief of Police to supervise its police officers, § 1983 cannot be invoked on this basis alone. As with the First Claim for Relief, in order for the

City of Trotwood or Chief Etter to be held liable under § 1983, Hale must demonstrate that each such Defendant violated a constitutional or statutory right; the existence of a "duty to supervise," though perhaps relevant to a tort claim under the common law of Ohio, is irrelevant to the federal claim.

*Third,* Hale has adduced no facts giving rise to a reasonable inference that the City of Trotwood imposed unconstitutional policies or customs upon citizens such as Hale. Thus, it cannot be held liable under § 1983. *See Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 692–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Fourth,* Chief Etter cannot be held liable under § 1983 because "a supervisor is not liable for failing to supervise the offending employee unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Comstock v. McCrary,* 273 F.3d 693, 712–13 (6th Cir.2001) (citation and internal quotation omitted). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* Hale has not demonstrated that Chief Etter authorized, approved or acquiesced in any unconstitutional conduct. *Fifth,* because the claim against the City of Trotwood and Chief Etter are derivative of the claims against Officer Vance and Detective McCrary, it must fail for the simple reason that Hale has failed to demonstrate that the latter two individuals violated her constitutional rights.[8] Accordingly, summary judgment will be sustained as to this claim.

---

8. On the other hand, the Defendants' invocation of Ohio Rev.Code § 2744.01, *et seq.,* is not well taken. The governmental immunity available thereunder does not extend to allegations of violations of rights secured by federal statutes or the United States Constitution. *See* Ohio Rev.Code § 2744.09(E).

## IV. *Conclusion*

For the reasons and citations of authority stated above, the Court finds the Defendants' Motion for Summary Judgment (Doc. # 14) well taken, and it shall be SUSTAINED.

Judgment shall enter in favor of the Defendants and against the Plaintiff on all counts.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.