OPINION
{¶ 1} Appellant, Dawn Thompson, appeals the judgment of the Portage County Court of Common Pleas awarding summary judgment in favor of appellees, John *Page 2 
Faddis ("Deputy Faddis") and Duane Kaley ("Sheriff Kaley"). For the reasons that follow, we affirm.
 {¶ 2} On June 12, 2001, appellant and Lesa Faddis,[1] entered into an ambiguous lease agreement whereby appellant could keep and care for Ms. Faddis' horse, Savanna, free within the lease period with an option to purchase the horse for $500 before the period ended. The lease specifically provided:
 {¶ 3} "I agree to lease Savanna 4 year old ½ arab/pinto breeding stock mare free for 1 year to Dawn Thompson on this day 12 June 2001 to Jan 1rst 2002 [sic]. I agree to sell her for 500.00 [sic] if they want to purchase her within that year, I also will give them her papers I receved [sic], at the time of purchase. Lesa Faddis owner."
 {¶ 4} Both appellant and Lesa Faddis signed the document which was dated June 12, 2001. A dispute arose between the parties regarding when appellant was required to return the horse. Appellant believed she was entitled to hold the horse without payment or penalty from June 12, 2001 through June 12, 2002. Alternatively, Ms. Faddis maintained the horse was to be either purchased or returned on or before the end of the 2001 "4-H year," i.e., January 1, 2002.
 {¶ 5} According to Ms. Faddis, in mid-January, she contacted appellant to discuss either the purchase or the return of Savanna. During their meeting, Ms. Faddis asked appellant whether she intended to pay for Savanna or return the horse. Appellant indicated she needed to speak with her husband after which she would contact Ms. Faddis. Ms. Faddis testified that appellant never made an offer to purchase *Page 3 
the horse. In February 2002, appellant moved from her residence. Ms. Faddis testified she made several unsuccessful attempts to contact appellant. Eventually she obtained appellant's new phone number and address. In possession of this information, Ms. Faddis' daughter, Jennifer, attempted to retrieve the horse in April 2002 but was rebuffed by appellant and ordered to leave her property.
 {¶ 6} While appellant admitted she did not return the horse, she testified she offered Ms. Faddis $500 in April of 2002, pursuant to the lease. Upon making the offer, however, appellant stated Ms. Faddis informed her she would only accept $1500 for Savanna. According to appellant, Ms. Faddis demanded Savanna be returned. Appellant testified she refused to return the horse but, in doing so, reiterated her offer to purchase the horse for $500.
 {¶ 7} On April 22, 2002, Ms. Faddis filed a criminal incident report. The report was taken by Deputy Joe Ballas. Under the category of offense, the deputy listed "theft" pursuant to R.C. 2913.02, a felony of the fifth degree. On May 11, 2002, Deputy Ballas filed a criminal complaint on the theft offense. On June 12, 2002, an arrest warrant was issued for appellant and, pursuant to the warrant, appellant was arrested by Deputy Ballas, et al., on June 15, 2002. Appellant was transported to the Sheriff's Department and questioned by Deputy Faddis.[2] The record reveals Deputy Faddis had no contact with appellant and did not participate in this case in any way prior to or after the *Page 4 
interview. Appellant testified Deputy Faddis conducted the interview in a professional manner.
 {¶ 8} On June 16, 2002, Deputy Ballas obtained a search warrant to search appellant's property and seize Savanna. On that day, Savanna was seized pursuant to the warrant and returned to Ms. Faddis. The theft charge was subsequently dismissed.
 {¶ 9} On October 26, 2004, appellant filed a complaint against Ms. Faddis, Sheriff Kaley, Deputy Faddis, and two unnamed John Does. Appellant's complaint asserted numerous claims against the defendants, including false arrest, false imprisonment, arrest without probable cause, trespass with malice and intent, violations of42 U.S.C. Section 1983, negligent supervision, and inadequate training. Appellant also alleged claims against Deputy Faddis for unjust enrichment and conversion. On May 31, 2005, appellant voluntarily dismissed the two unnamed John Does with prejudice.
 {¶ 10} On July 29, 2005, Sheriff Kaley and Deputy Faddis filed their motion for summary judgment. On November 8, 2005, appellant filed her opposition to appellees' motion for summary judgment. On November 28, 2005, appellees filed a reply in support of their motion for summary judgment. Finally, on April 3, 2006, the Portage County Court of Common Pleas awarded summary judgment in favor of Sheriff Kaley and Deputy Faddis. Appellant now appeals and assigns the following error for our consideration:
 {¶ 11} "The trial court erred in granting summary judgment to the defendants John Faddis and Duane Kaley."
 {¶ 12} Summary judgment is proper where: *Page 5 
 {¶ 13} "* * * (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v.Eckstein, 76 Ohio St.3d 383, 385, 1996-Ohio-389.
 {¶ 14} The moving party to a Civ.R. 56 motion bears the initial burden of providing the court with a basis for the motion and identifying evidence within the record which demonstrates the absence of an issue of fact on a material element of the nonmoving party's claim. Dresher v.Burt, 75 Ohio St.3d 280, 296, 1996-Ohio-107. If the moving party satisfies its burden, the nonmoving party has the reciprocal burden of providing evidence to demonstrate an issue of material fact. If the nonmoving party fails to satisfy his or her burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's award of summary judgment de novo. Schnarrs v. Girard Bd. ofEducation, 168 Ohio App.3d 188, 191, 2006-Ohio-3881.
 {¶ 15} Under her assigned error, appellant argues the trial court erred in granting summary judgment in appellees' favor because they breached their duties, as police officers, to investigate the alleged crime for which she was arrested. Appellant asserts the alleged criminal complaint was filed prematurely because the entire matter "was subject to a contract which made the redress of the complainant's grievance a civil matter." Moreover, the authorities made no attempt to contact her and confirm or dispel the veracity of the allegations in the complaint. *Page 6 
 {¶ 16} Appellant's argument is somewhat fragmented and thus, while we shall address the substantive merits of her contentions, our analysis will proceed from appellant's allegations as they appear in her complaint. Appellant's complaint alleged claims against appellees for false arrest, false imprisonment, arrest without probable cause, trespass with malice and intent, violation of federal civil rights including use of excessive force during her arrest, negligent supervision, and inadequate training. Appellant also alleged a claim against appellee Faddis for unjust enrichment and conversion.
 {¶ 17} First of all, according to appellant's deposition testimony, Deputy Faddis neither participated in appellant's arrest nor executed the search warrant. Accordingly, the allegations for false arrest, false imprisonment, arrest without probable cause, trespass with malice and intent, violation of federal civil rights pertaining to her arrest, negligent supervision, and inadequate training do not apply to Deputy Faddis. To the extent these allegations do not relate to any act or omission ascribed to Deputy Faddis, there is no genuine issue of material fact to be litigated. Thus, the trial court's award of summary judgment in Deputy Faddis' favor was appropriate on each of these causes of action.
 {¶ 18} The remaining allegations against Deputy Faddis assert he converted property in appellant's rightful possession and was unjustly enriched by the events which led to her arrest. To prove the tort of conversion a claimant must demonstrate the defendant wrongfully exerted control over the claimant's personal property inconsistent with or in denial of his or her rights. Abbe Family Foundation and Trust v. PortageCo. Sheriff's Dept., 11th Dist. No. 2005-P-0060, 2006-Ohio-2497, at ¶ 29. A *Page 7 
person seeking damages for conversion must show that he or she had an ownership interest in or a right to possess the property at the time of the alleged conversion. Meros v. Mazgaj (Apr. 30, 2002), 11th Dist. No. 2001-T-0100, 2002 Ohio App. LEXIS 2052, *8.
 {¶ 19} The record indicates Portage County Sheriffs Department deputies arrived at appellant's residence on June 15, 2002 and retrieved the horse. As indicated above, Deputy Faddis was not among the officers involved in the search of appellant's property or the seizure of the horse. Moreover, there is no record evidence that Deputy Faddis ever possessed or exerted control over the horse. Lesa Faddis testified that, when she was married to Deputy Faddis, he neither had a financial interest in her horses nor did he participate in the care of the animals. There is no evidence demonstrating Deputy Faddis ever exerted control, wrongfully or otherwise, over Savanna.
 {¶ 20} Furthermore, appellant has failed to demonstrate she had an ownership interest or a right to possess the horse on the day of the seizure. Viewing the lease agreement in a light most favorable to appellant, she had a right to possess the horse for one year, i.e., from June 12, 2001 through June 12, 2002. While she had the option to purchase the horse for $500 within that time frame, she failed to tender payment to the owner, Lesa Faddis. Thus, at the time of the seizure on June 16, 2002, appellant neither owned nor had a legitimate right to possess the property. Hence, we hold there is no genuine issue of material fact as to whether Deputy Faddis converted the property in question. *Page 8 
 {¶ 21} With respect to the unjust enrichment claim, appellant asserts Deputy Faddis was unjustly enriched when he and Lesa Faddis allegedly breached the agreement to sell the horse. Unjust enrichment arises where a party receives a benefit in the absence of a legally sufficient legal agreement which results in inequity or injustice. Euclid Asphalt PavingCo. v. Pricom Asphalt Sealcoating, Inc., 11th Dist. No. 2004-L-175,2005-Ohio-7049, at ¶ 52. The record indicates Deputy Faddis and Lesa Faddis were in the process of divorcing at the time of the incident in question. As indicated above, Lesa Faddis testified that Deputy Faddis had no ownership or other interest in the horse. Lesa Faddis also averred that Deputy Faddis was not involved in the lease nor did he care how much she received for the sale of the horse. In this respect, the record fails to reveal how Deputy Faddis was unjustly enriched by Savanna's return to Lesa Faddis.
 {¶ 22} Moreover, during her deposition, appellant testified she believed appellees Kaley and Faddis as well as Lesa Faddis and Officer Ballas were somehow involved in a conspiracy against her:
 {¶ 23} "Q. Okay. Can you tell me what their conspiracy was for, what purpose were these conspirators trying to accomplish in your mind?
 {¶ 24} "A. To take the horse back because they had another buyer (sic) would pay them the $1500 rather than the 500. I guess for personal gain, for more money out of the horse.
 {¶ 25} "Q. Do you think that Sheriff Kaley was supposed to get some of the money from the sale of this horse?
 {¶ 26} "A. I don't know. *Page 9 
 {¶ 27} "Q. Do you believe Officer Ballas was supposed to get some money from the sale of the horse?
 {¶ 28} "A. I don't know.
 {¶ 29} "Q. Was the horse ever sold?
 {¶ 30} "A. I don't know.
 {¶ 31} "Q. Do you know if they got any money at all as a result of this alleged conspiracy?
 {¶ 32} "* * *
 {¶ 33} "A. No. * * *"
 {¶ 34} The foregoing reveals that appellant's allegation regarding unjust enrichment is not supported by any evidence. The record demonstrates that Deputy Faddis had no monetary or ownership interest in the horse. Further, appellant's deposition testimony shows she had no proof the horse was ever sold, let alone sold for an amount greater than that set forth in the lease. Without some evidence that Deputy Faddis was actually enriched from the alleged breach, there is no genuine issue of material fact regarding the issue of unjust enrichment.
 {¶ 35} We shall next address appellant's state tort claims as they relate to Sheriff Kaley. Sheriff Kaley was neither present nor had any specific role in the complaint process or the actions which led to appellant's arrest. As such, appellant seeks to hold Sheriff Kaley responsible, through the doctrine of respondeat superior, for her alleged false arrest, alleged imprisonment, arrest, and the trespasses allegedly committed by the arresting deputies. Appellant also seeks to hold Sheriff Kaley responsible for their alleged negligent supervision of the deputies and the alleged inadequate training. *Page 10 
 {¶ 36} We first note that although the Portage County Sheriffs Department was identified as an "offending party," the Department was not named as a defendant in the underlying matter. However, because Sheriff Kaley and his deputies are employees of the Department, they are afforded general immunity under R.C. Chapter 2744 unless appellant can demonstrate an applicable exception to immunity. Kendzierski v.Carney, 4th Dist. No. 22739, 2005-Ohio-6735, at ¶ 12 (Sheriffs Department is a political subdivision under R.C. 2744.01(F) and thus employees thereof enjoy general immunity subject to R.C. 2744.03(A)(6)). Specifically, R.C. 2744.03(A)(6) grants an employee of a political subdivision immunity unless:
 {¶ 37} "(a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;
 {¶ 38} "(b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 {¶ 39} "(c) Liability is expressly imposed upon the employee by a section of the Revised Code."
 {¶ 40} Here, appellant's arrest was the result of a criminal complaint filed by Lesa Faddis. After obtaining arrest and search warrants, each signed by a judge, the deputies seized the horse, arrested appellant, and detained her. The warrants fundamentally undermine appellant's claims for false arrest, false imprisonment, arrest without probable cause, and trespassing. The arrest and appellant's subsequent detention were proper and supported by probable cause. Moreover, the warrants demonstrate the deputies were legally permitted to be on appellant's property for the purpose of searching for the horse and arresting her. Finally, although appellant alleges *Page 11 
negligent supervision and inadequate training, the record shows the officers proceeded through the proper legal channels, obtained valid warrants, and affected the arrest with no apparent or demonstrable breach of procedure or violation of the law.
 {¶ 41} Even when the evidence is viewed in a light most favorable to appellant, we hold none of the exceptions set forth under R.C.2744.06(A)(6)(a) — (c) apply to the facts in this case. Therefore, Sheriff Kaley is immune from liability for the state causes of action pursuant to the Political Subdivision Tort Immunity Act.[3]
 {¶ 42} Finally, appellant's Section 1983 claim asserts the arresting deputies wrongfully invaded her domicile, wrongfully arrested her, and used excessive force in her arrest. "To state a claim for relief in an action brought under [Section] 1983, [a party] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." American Mfrs. Mut. Ins. Co. v. Sullivan (1999),526 U.S. 40, 49-50. Although not specifically set forth in her complaint, we assume appellant is alleging violations of her Fourth Amendment rights against unreasonable search and seizure.
 {¶ 43} We first point out that appellant's contentions that her domicile was wrongfully invaded and she was wrongfully arrested are unsupported by the record. As discussed supra, the deputies obtained facially valid search and arrest warrants prior to *Page 12 
searching appellant's property for the horse and arresting appellant. Moreover, appellant admitted in her deposition that the arresting officers were professional in their demeanor and had no physical contact with her. These admissions fundamentally undermine appellant's assertion that the officers used force of any kind, let alone excessive force. The evidence, even when viewed in appellant's favor, does not support her Section 1983 allegations.
 {¶ 44} However, assuming arguendo, appellant was able to establish a prima facie Fourth Amendment violation, she would still be unable to hold Sheriff Kaley liable for the acts of the arresting deputies. Appellant attempts to impute liability to Sheriff Kaley by operation of the doctrine of respondeat superior. However, supervisory personnel may not be held liable under Section 1983, simply by application of respondeat superior. Monnel v. Dept. of Social Services City of NewYork (1978) 436 U.S. 658; see, also, Kinney v. Ohio Dept. ofAdministrative Servises (1986), 30 Ohio App.3d 121, 122 (holding "the liability of supervisory personnel must be based upon more than the mere right to control employees"). To hold a supervisor liable, a party must demonstrate the defendant "`either encouraged the specific incident of misconduct or in some other way directly participated in it. At the minimum a plaintiff must show that the official [against whom the claim is brought] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'"Comstock v. McCrary (C.A. 6, 2001), 273 F.3d 693, 712-713, quotingShehee v. Luttrell (C.A. 6, 1999), 199 F.3d 295, 300. Appellant has made no such showing.
 {¶ 45} In sum, appellant has failed to put forth evidence that the deputies under Sheriff Kaley's charge engaged in any misconduct and, even had she been able to do *Page 13 
so, she has failed to demonstrate Sheriff Kaley authorized, approved of, or knowingly acquiesced in any unconstitutional conduct. Therefore, the trial court did not err in awarding summary judgment in Sheriff Kaley's favor.
 {¶ 46} Appellant's sole assignment of error lacks merit.
 {¶ 47} For the reasons above, appellant's assignment of error is overruled and the judgment of the Portage County Court of Common Pleas is hereby affirmed.
DIANE V. GRENDELL, J., concurs in judgment only, COLLEEN MARY OTOOLE, J., dissents.
[1] Lesa Faddis, defendant below, is not a party to the instant appeal. Although the trial court did not award summary judgment in Lesa Faddis' favor, appellant dismissed her claims against Ms. Faddis with prejudice on June 19, 2006 after this court remanded the case, sua sponte, to the trial court on a separate issue.
[2] Deputy Faddis was married to Lesa Faddis throughout the relevant time periods; however, the record indicates they were in the process of obtaining a divorce.
[3] Even if immunity under R.C. Chapter 2744. did not attach, appellant fails to allege evidence that Sheriff Kaley would be liable pursuant to the doctrine of respondeat superior. R.C. 311.05 controls situations where a party desires to hold a sheriff liable for the acts of his or her deputies. The statute provides: "The sheriff shall only be responsible for the neglect of duty or misconduct in office of any of his deputies if he orders, has prior knowledge of, participates in, acts in reckless disregard of, or ratifies the neglect of duty or misconduct in office of the deputy." It is axiomatic that there must be evidence of tortious wrongdoing on the part of the deputies before any liability can be imputed to Sheriff Kaley. The record reveals no such wrongdoing and even assuming there were, there is no evidence the sheriff had any role in the search, seizure, or arrest. *Page 1