NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0950n.06

No. 13-1058

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

KIMBERLY CAROL SCHULZ, )
)
    Plaintiff-Appellee, )
)
v. )
)
DAVID GENDREGSKE; BRIAN MCDOWELL, )
)
    Defendants-Appellants, ) ON APPEAL FROM THE UNITED
) STATES DISTRICT COURT FOR
and ) THE EASTERN DISTRICT OF
) MICHIGAN
COUNTY OF CLARE, )
)
    Defendant.

<div style="border:1px solid black">

**FILED**

Nov 05, 2013

DEBORAH S. HUNT, Clerk

</div>

Before: COLE, KETHLEDGE, and STRANCH, Circuit Judges.

KETHLEDGE, Circuit Judge. Animal-control officers in Clare County, Michigan seized Kimberly Schulz's golden retrievers and then put them up for adoption without her consent. She sued Animal Control Director David Gendregske and Animal Control Officer Brian McDowell for state-law conversion and for violations of her Fourth and Fourteenth Amendment rights. The officers appeal the district court's partial denial of their motion for summary judgment. We reverse.

I.

We take the facts in the light most favorable to Schulz. *See Stoudemire v. Mich. Dep't of Corrs.*, 705 F.3d 560, 565 (6th Cir. 2013).

Schulz bred golden retrievers for sale as pets and service dogs. Schulz also owned several horses. A court had previously ordered Schulz to remove all but three dogs from her own residence, so she hired Barry Laubscher to care for the animals on his property. In exchange, Schulz paid Laubscher's rent and bought him food.

On March 12, 2009, Gendregske and McDowell went to Laubscher's residence to investigate complaints that the horses there were starving. The officers knew from prior visits that Laubscher kept horses and golden retrievers on his property. As the officers pulled into the driveway, they saw nine horses in small pens. Closer inspection revealed evidence of underfeeding: the horses had visible rib and hip bones, they had apparently been eating the bark off nearby pine trees, and the amount of dung in their pens was abnormally small. In addition, there was only one bale of hay at the property, though Laubscher told the officers that a delivery was scheduled for later that day. Gendregske and McDowell also noticed that the horses' water was frozen and that one horse's leg was bleeding. Laubscher told the officers that he had just finished taking care of the dogs and was about to break the ice on the horses' water.

After leaving the residence, McDowell immediately prepared and submitted an affidavit for a search warrant. The affidavit stated that McDowell "observed there was no food or water available for any of the animals on the property." A magistrate authorized a search of Laubscher's residence and the seizure of "any and all animals including but not limited to: golden retriever dogs and 9 horses." A half-hour later, animal-control officers searched the property. In a large metal shed, they found 23 golden retrievers who appeared to be healthy. Officers seized the horses and all 23 dogs. Approximately ten days later, the Clare County prosecutor charged Schulz and Laubscher with

abandonment and cruelty to 4–10 animals. *See* Mich. Comp. Laws § 750.50(4)(c). The animals remained in Gendregske's custody while those charges were pending.

A few weeks later, on April 13, 2009, a Livingston County judge sentenced Schulz to two years of probation on an unrelated charge of "animals running at large." As a condition of her probation, Schulz could not own or possess any animals or reside on any premises where animals were kept. When Gendregske learned of Schulz's sentence, he put the seized animals up for adoption without notifying Schulz.

Shortly thereafter, Gendregske received a complaint that two adult golden retrievers were loose near Laubscher's residence. Gendregske went to the residence, but no one answered. He could hear a puppy whining inside. The next day, Gendregske returned and questioned Laubscher about the dogs. According to Laubscher, Schulz's husband had left the two adult golden retrievers with Laubscher's sister, who, in turn, left them with Laubsher.

What happened next is disputed, but we accept as true Schulz's description of the events. *See Keith v. City of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013). According to Schulz, Gendregske told Laubscher that Schulz was planning to blame Laubscher for the mistreatment of the horses—specifically, that he had spent the money she had given him for the horses' food on alcohol. Gendregske then said he would ask the prosecutor to drop or reduce the animal-cruelty charges against Laubscher if he would admit that Schulz had given the puppy to Laubscher while she was on probation. Eventually, Laubscher told Gendregske that Schulz had given him the puppy. Gendregske then notified Schulz's probation officer that Schulz had possessed an animal in violation of the court's order. The probation officer scheduled a hearing for June.

Before the probation hearing, a Clare County judge found probable cause to try both Schulz and Laubscher for animal cruelty and abandonment of the horses seized from Laubscher's property. The judge made no findings as to the dogs because "[t]here was no testimony with regards to the [] retrievers" and there was no "reason to believe that there was inadequate care for the dogs."

At Schulz's probation violation hearing, she swore that she had not "contact[ed], possessed, owned, or lived with any animal" after the April 13th Order. Laubscher testified that he had lied to Gendregske when he said Schulz gave him the puppy. When asked why he lied, Laubscher replied, "it's quite the story; it's an on-going story." The judge found that there was insufficient evidence that Schulz violated her probation.

On November 13, the Clare County prosecutor dismissed the abandonment and cruelty charges against Schulz and Laubscher, citing the need to investigate further before proceeding. The county has not pursued those charges.

Schulz thereafter sued Gendregske and McDowell, among others, for violating her constitutional rights and committing various torts. The officers moved for summary judgment, in response to which Schulz voluntarily dismissed several claims. The district court granted the motion as to some of the remaining claims but denied it as to Schulz's claims of unlawful seizure of her dogs, false arrest for a probation violation, procedural due process violations, and state-law conversion for the dogs' adoption. The officers now appeal the court's denial of qualified and state-law immunity as to those claims.

No. 13-1058
*Schulz v. Gendregske, et al.*

## II.

"We review the denial of summary judgment on the basis of qualified immunity de novo." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). "Determinations of qualified immunity require us to answer two questions: first, whether the officer violated a constitutional right; and second, whether that right was clearly established in light of the specific context of the case." *Hayden v. Green*, 640 F.3d 150, 153 (6th Cir. 2011). On interlocutory appeal, however, "[w]e lack jurisdiction to consider a district court's . . . determin[ation] [that] . . . the pretrial record sets forth a genuine issue of fact for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 369–70 (6th Cir. 2009) (internal quotation marks omitted). Thus, we consider only whether the district court erred in holding that the officers were not entitled to qualified immunity as a matter of law. *Id.*

## A.

Gendregske and McDowell first claim that they are entitled to qualified immunity on Schulz's claim of unlawful seizure. Schulz alleges that McDowell's affidavit was false and misleading, and that the resulting warrant authorizing the dogs' seizure was invalid. A warrant is invalid if the officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions" in a warrant application and "such statements or omissions were . . . necessary[] to the finding of probable cause." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (internal quotation marks and alterations omitted). The district court found a material question of fact as to whether the warrant included false or misleading statements.

On appeal from the denial of qualified immunity, however, we lack jurisdiction to review the district court's determination that there was a genuine issue of material fact as to whether portions of McDowell's affidavit were false and misleading. *See Johnson v. Jones*, 515 U.S. 304, 319–20 (1995). Instead, we must "set aside the [allegedly false] statements and include the information omitted in order to determine whether the affidavit is still sufficient to establish probable cause." *Sykes*, 625 F.3d at 305. The existence of probable cause depends on whether the facts and circumstances were sufficient for a reasonable person to believe that the defendant had committed or was committing a crime. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). If not, the warrant is invalid, and the resulting seizure unlawful.

Moreover, government officials are entitled to qualified immunity for "objectively reasonable mistakes, regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Hensley v. Gassman*, 693 F.3d 681, 687 (6th Cir. 2012) (internal quotation marks omitted). Thus, the officers here are entitled to qualified immunity "unless it is obvious that no reasonably competent official would have concluded" that the warrant was supported by probable cause. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).

Here, the statements that Schulz alleges are false or misleading are that there was no food or water "available for any of the animals," and that there was only one bale of hay for the horses. She contends that McDowell knew that there was plenty of food for the dogs, that Laubscher was about to break the horses' water, and that Laubscher was expecting a hay delivery later that day. We must therefore consider the affidavit without the statement about the dogs' food and with the

additional information about the horses' hay and water. But even with these omissions and alterations, there was probable cause to seize both the dogs and the horses. The affidavit states that McDowell observed three emaciated horses "in need of immediate medical attention" and that "[t]he remainder of the horses seemed to be under weight." One horse was in "the wors[t] condition a horse can be in." And McDowell—who "received extensive training in all aspects of animal control"—stated his belief that a search of the property would lead to further evidence of animal cruelty. This evidence sufficed for McDowell to reasonably believe that Schulz and Laubscher were likely mistreating all of the animals in their care. There is no clearly established law that prohibits an officer from seizing all of an individual's animals where there is evidence that many of the animals were severely mistreated. *See, e.g.*, *Brown v. Tull*, 218 F.3d 743, 2000 WL 821404 at *5 (5th Cir. 2000) (unpublished table opinion). Indeed, common sense suggests that where there is evidence that an animal owner mistreats a substantial number of her animals, it is likely that she mistreats all of the animals in her care. McDowell is therefore entitled to qualified immunity on Schulz's claim of unlawful seizure.

Schulz does not allege that Gendregske was involved in preparing the affidavit or presenting the warrant application to the magistrate. Gendregske is therefore entitled to qualified immunity on this claim. *See Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003).

### B.

Gendregske next argues that he is entitled to qualified immunity on Schulz's false arrest claim. Schulz contends that Gendregske coerced Laubscher into lying about receiving the puppy from her, that Gendregkse knew Laubscher was lying, and that Gendregske knowingly provided this

false information to her probation officer, which in turn led to her arrest. Gendregske contends that he is entitled to qualified immunity because he did not coerce Laubscher and because a reasonable officer would have believed Laubscher when he told Gendregske about the puppy.

As noted above, "qualified immunity shields government officials performing discretionary functions from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Jasinski v. Tyler*, 729 F.3d 531, 540 (6th Cir. 2013) (internal quotation marks omitted). "This standard requires the courts to examine the asserted right at a relatively high level of specificity, and on a fact-specific, case-by-case basis." *O'Malley v. City of Flint*, 652 F.3d 662, 668 (6th Cir. 2011) (internal quotation marks and alterations omitted).

We have never held that an officer who is neither the arresting officer nor the proponent of the warrant can be liable for false arrest. *See, e.g.*, *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) ("A false arrest claim under federal law requires a plaintiff to prove that the *arresting officer* lacked probable cause to arrest the plaintiff." (emphasis added)). In an unpublished opinion, we assumed without deciding that an officer may be liable for false arrest even though he "was not the arresting officer and [] the Prosecutor's Office authorized a warrant" on a different charge from the one "upon which [he] sought to have [the plaintiff] arrested." *Garcia v. Thorne*, 520 F. App'x 304, 307 (6th Cir. 2013); *see also Miller v. Prince George's Cnty., Md.*, 475 F.3d 621, 630 (4th Cir. 2007) (finding liability where the defendant made false statements in an affidavit but did not arrest plaintiff). But that sort of assumption does not amount to a "general statement[] of the law [] capable of giving clear and fair warning to officers even where the very

-8-

action in question has not previously been held unlawful." *Walker v. Davis*, 649 F.3d 502, 504 (6th Cir. 2011) (internal quotation marks omitted). Established law must "truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Gragg v. Ky. Cabinet for Workforce Dev*., 289 F.3d 958, 964 (6th Cir. 2002) (internal quotation marks and italics omitted). Here, no clearly established law compels the conclusion that officers who neither arrested the plaintiff nor swore false statements in a warrant affidavit can be liable for false arrest. (Schulz's alleged facts might be a better fit with a malicious prosecution claim, as "existing cases do indicate that an officer may be responsible for commencing a criminal proceedings against a plaintiff, where the officer made, influenced, or participated in the decision to prosecute." *Sykes*, 625 F.3d at 311 (internal quotation marks and alteration omitted). But Schulz did not sue Gendregske for malicious prosecution.) Thus, Gendregske is entitled to qualified immunity on Schulz's false-arrest claim.

## C.

Gendregske also seeks qualified immunity on Schulz's procedural due process claim. Schulz's claim here is that Gendregske violated her due process rights when he put the seized golden retrievers up for adoption without notifying her. She contends that Gendregske was required to follow the forfeiture procedures in Michigan's animal cruelty law before depriving her of her property interest in the animals. *See* Mich. Comp. Laws § 750.50(3). But where a state employee deprives an individual of property through an unauthorized action (rather than established state procedure), that individual has no due process claim if state remedies are adequate to redress the procedural due process violation. *See Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (citing

*Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984)). Here, Schulz alleged that Gendregske acted contrary to state procedure (specifically, Michigan Comp. Law § 750.50(3)), and she does not allege that state remedies are inadequate (indeed, she brought a state law conversion claim against Gendregske on this very issue). Gendregske is therefore entitled to qualified immunity on Schulz's procedural due process claim.

<div align="center">D.</div>

Finally, the officers seek reversal of the district court's denial of state-law immunity on Schulz's claim that the officers committed conversion when they put her dogs up for adoption. This claim concerns only Michigan law. We have "jurisdiction over interlocutory appeals concerning pendent [Michigan] law claims of governmental immunity." *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007).

The district court, however, did not address state-law immunity in its opinion below. We therefore remand this claim so that the district court may consider this issue in the first instance. *See, e.g.*, *Stoudemire*, 705 F.3d at 576.

<div align="center">* * *</div>

The district court's January 10, 2013 Order is reversed as to the denial of qualified immunity on Schulz's unlawful seizure, false arrest, and procedural due process claims. The case is otherwise remanded for further proceedings consistent with this opinion.