NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0814n.06

No. 14-3093

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Oct 28, 2014*
DEBORAH S. HUNT, Clerk

JOANN SNYDER, ET AL.,

      Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA, ET AL.,

      Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

BEFORE:    SILER, CLAY, and GRIFFIN, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiffs JoAnn Snyder ("Plaintiff") and Larry Snyder appeal a district court order granting Defendants' 12(b)(6) and 12(b)(1) motions to dismiss their various constitutional and Ohio tort law claims. Defendants in this case are the United States, Special Agent Chris Giordano of the Federal Bureau of Investigation ("FBI"), the City of Cincinnati, and Officer Jason O'Brien of the Cincinnati Police Department ("CPD"). Plaintiff's various constitutional and Ohio tort law claims were brought in response to her arrest, which was later determined to be based on false information. For the reasons set forth below, we **AFFIRM** the district court in full.

## BACKGROUND

### I.    Factual Background

Plaintiff was arrested on April 17, 2012, in a bizarre case of mistaken identity. Four months earlier, in December 2011, the Safe Streets Task Force ("SSTF")—run by the Cincinnati

Field Office of the FBI in conjunction with CPD—was tasked with investigating drug-trafficking in the Cincinnati metropolitan area. Defendants Special Agent Giordano and Officer O'Brien were both members of this task force.

During the 2011 investigation, a confidential informant conveyed to Giordano "that a woman named Stephanie Snyder and her mother were selling pills believed to be 'Oxy.'" (R.9, Amended Cmplt., PageID #38.) The informant also noted that the mother's name may be JoAnn. Based on this information, Giordano conducted a driver's license search for women named JoAnn Snyder, who lived in the Cincinnati metropolitan area and were between the ages of 50 and 70—an appropriate age range for an individual suspected to be Stephanie's mother. The search returned one result—Plaintiff JoAnn Snyder. Giordano showed the driver's-license photograph to the confidential informant, and asked whether Plaintiff was in fact the woman known to him as Stephanie Snyder's accomplice. The informant responded equivocally, noting that Plaintiff "could be" the same woman, provided that the photograph was taken prior to the accomplice's extensive drug use.

SSTF thereafter used the confidential informant to set up a drug transaction with Stephanie Snyder and her accomplice, now mistakenly identified as Plaintiff. On December 8, 2011, Giordano and O'Brien, along with other law enforcement officers, watched the building where the transaction was to occur from inside of a vehicle parked an unknown distance away. Defendants were unable to make a positive identification of Stephanie's accomplice and no arrests were made.

One month later, Giordano arranged a face-to-face meeting with the woman then suspected to be Plaintiff. Again, no arrest was made, and Giordano failed to confirm that the

woman selling drugs was the same woman whose driver's license he had pulled one month earlier. The FBI decided to discontinue its investigation into "JoAnn Snyder," and sometime in January of 2012 transferred its file containing Plaintiff's information to CPD and Officer O'Brien.

Over the next four months, nothing was done to confirm the identity of Stephanie Snyder's accomplice. Plaintiff maintains that the accomplice was not in fact Stephanie's mother and did not share her last name. Plaintiff further contends that the FBI (or CDP) had custody over Stephanie Snyder at some point during the four months prior to Plaintiff's arrest, yet still failed to confirm the identity of Stephanie's accomplice. Defendants have neither confirmed nor denied these allegations.

On April 16, 2012, O'Brien submitted an affidavit and complaint, averring to knowledge that Plaintiff was involved in the sale and distribution of OxyContin, and a warrant was issued for Plaintiff's arrest. The bases for this knowledge were twofold: (1) the FBI file containing the confidential informant's equivocal identification of Plaintiff, and (2) O'Brien's personal observation of the December 8, 2011, drug transaction.

The following day, while driving, Plaintiff was surrounded by three West Chester Police cruisers and subsequently arrested. She was held by the West Chester Police for a few hours and then transferred to the custody of CPD. Thereafter, Plaintiff was interrogated and processed. *Id.* The processing included a full body strip search, a DNA swab, fingerprinting, and having her mug shot taken. Plaintiff spent the night in jail and was released on $1,000 bond, after being arraigned at 11:00 a.m. the following morning. The ordeal lasted approximately twenty-two hours.

On April 27, 2012, the grand jury returned a "no bill," refusing to indict Plaintiff. Plaintiff spent the next few months attempting to get the charges dropped and have her record expunged. On August 15, 2012, her request was granted. The court noted that "the interest of the applicant in having these records sealed outweigh the need of the government to maintain such records." (R. 20-1, Entry Expunging All Records, PageID #79.) The FBI also took actions to rectify the record by requesting that a website take down information regarding Plaintiff's arrest. Plaintiff pursued administrative remedies with the FBI and United States Department of Justice pursuant to 28 U.S.C. § 2401(b), and on April 15, 2013 her claims were denied.

## II.    Procedural History

Plaintiff filed her complaint on April 30, 2013 in the United States District Court for the Southern District of Ohio. She named as Defendants, the United States of America, the FBI, the City of Cincinnati, John Does, Agents of the FBI and Officers of CPD, as well as Special Agent Giordano and Officer O'Brien, both in their individual capacities.[1] The parties stipulated to the voluntary dismissal of a number of claims on August 5, 2013. The claims that remained against each Defendant are as follows[2]:

United States of America:

(1) Negligent Hiring, Failure to Train, Negligent Retention and Supervision; (2) False Arrest and Imprisonment; (3) Assault; (4) Negligence; (5) Negligent and/or Intentional Infliction of Emotional Distress; (6) Punitive Damages

---

[1] She amended her complaint on July 23, 2013.

[2] The FBI was dismissed as a separate defendant entirely. Plaintiff's husband, Larry Snyder, is also a party to the state law claims, and has an additional claim for loss of consortium, the dismissal of which he now appeals. We do not find it necessary to discuss the merits of his claims individually, inasmuch as they are derivative of Plaintiff's claims.

Special Agent Giordano:

> (1) Constitutional and/or Civil Rights Violations (*Bivens*); (2) Conspiracy to Violate Plaintiff's Constitutional and/or Civil Rights (*Bivens*); (3) Equal Protection; (4) Malicious Prosecution; (5) Abuse of Process; (6) Negligent and/or Intentional Infliction of Emotional Distress; (7) Punitive Damages

City of Cincinnati:

> (1) Constitutional and/or Civil Rights Violations (§ 1983); (2) Conspiracy to Violate Plaintiff's Constitutional and/or Civil Rights (§ 1983); (3) Equal Protection; (4) Negligent Hiring, Failure to Train, Negligent Retention and Supervision; (5) False Arrest and Imprisonment; (6) Assault; (7) Malicious Prosecution; (8) Abuse of Process; (9) Negligence; (10) Negligent and/or Intentional Infliction of Emotional Distress; (11) Punitive Damages

Officer O'Brien:

> (1) Constitutional and/or Civil Rights Violations (§ 1983); (2) Conspiracy to Violate Plaintiff's Constitutional and/or Civil Rights (§ 1983); (3) Equal Protection; (4) False Arrest and Imprisonment; (6) Assault; (7) Malicious Prosecution; (8) Abuse of Process; (9) Negligence; (10) Negligent and/or Intentional Infliction of Emotional Distress; (11) Punitive Damages

The United States moved to dismiss for lack of subject matter jurisdiction Plaintiff's negligent hiring, failure to train, and negligent retention and supervision claims on August 5, 2013. The United States also moved, along with Giordano, to dismiss for failure to state a claim, the remainder of Plaintiff's claims against them. Defendants Cincinnati and O'Brien followed suit three weeks later. The district court granted Defendants' motions as to all counts on January 7, 2014.

Plaintiff does not appeal her state law claims against Giordano individually; nor does she appeal the district court's decision dismissing her equal protection claims.

**DISCUSSION**

### I.      Claims Against the United States

The district court lacked subject matter jurisdiction to hear Plaintiff's negligent hiring, failure to train, and negligent supervision and retention claims against the United States because the employment decisions of a federal agency are a "discretionary function," and therefore not subject to the United States' waiver of sovereign immunity under the Federal Tort Claims Act ("FTCA").  Plaintiff's other Ohio tort law claims likewise fail for failure to plead facts that state a plausible claim for relief.

#### A.      Motion to Dismiss for Lack of Subject Matter Jurisdiction

We review *de novo* the dismissal of a claim for lack of subject matter jurisdiction. *Kennedy v. United States Veterans Admin.*, 526 F. App'x 450, 453 (6th Cir. 2013).  Because this is a facial attack on jurisdiction (and not a factual one) we accept as true the allegations in Plaintiff's complaint. *Id.*

##### 1.      The Discretionary Function Exception to the FTCA

Typically, suits against the United States are barred by sovereign immunity. *Kohl v. United States*, 699 F.3d 935, 939 (6th Cir. 2012).  The FTCA is a narrow waiver of that immunity and contains numerous exceptions. *Id.*  The discretionary function exception, at issue in this case, is broad in scope and places a "significant limitation on" the FTCA waiver. *Montez v. United States*, 359 F.3d 392, 395 (6th Cir. 2004).  If the exception applies, "federal courts lack subject-matter jurisdiction, and the claim must be dismissed." *Kohl*, 699 F.3d at 940.

Pursuant to 28 U.S.C. § 2680(a) the waiver shall not apply to any acts or omissions of government agents "based upon the exercise or performance or the failure to exercise or perform

a discretionary function . . . whether or not the discretion involved be abused." This exception is intended to prevent "judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy." *United States v. S. A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). Notably, the exception equally applies to decisions made by actors at all levels of government, so long as their discretionary actions involve policy-based judgments. *Kohl*, 699 F.3d at 940 (citing *Varig Airlines*, 467 U.S. at 813).

This Court must consider two factors when determining whether an action or omission falls within the discretionary function exception. *Montez*, 359 F.3d at 395 (citing *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991)). First, the act (or omission) must be one that "involves an element of judgment." *Gaubert*, 499 U.S. at 322–23. Second, the nature and quality of that judgment must be of the type the exception seeks to shield from liability (*i.e.* concerning matters of policy). *Id.* The exception does not apply unless both conditions are met.

### 2. Negligent Hiring, Failure to Train, and Negligent Retention and Supervision

At the outset, we "determine exactly what conduct is at issue," prior to considering the discretionary function factors. *Rosebush v. United* States, 119 F.3d 438, 441 (6th Cir. 1997). Plaintiff argues that "the district court erred by solely focusing on whether the actions at issue constitute 'employment decisions.'" *Appellant's Br.* at 15. However, Plaintiff's complaint states that the United States "negligently hired, failed to train, [and] negligently retained and/or supervised [its] employees." (R. 9 Amended Cmplt., PageID #46). This language certainly suggests that her claim is related to "employment decisions." Significantly, Plaintiff points to no specific regulations that would constrain the judgment exercised in making these decisions. We

will not guess at what conduct she perceives as escaping the breadth of the discretionary function exception. *See Watkins v. United States*, No. 98-6038, 1999 U.S. App. LEXIS 21010, at *7 (6th Cir. 1999) (upholding the district court's dismissal of the plaintiff's claim for lack of subject matter jurisdiction because the plaintiff "consistently failed to identify with any specificity how [the defendant's] conduct violated a mandatory federal regulation or policy that allowed no judgment") (internal quotation marks omitted).

This Circuit has consistently held that agency supervisory and hiring decisions fall within the discretionary function exception. *See, e.g.*, *O'Bryan v. Holy See*, 556 F.3d 361, 384 (6th Cir. 2009) ("[T]he selection of employees, officials and officers typically falls within the scope of the FTCA's discretionary function exception."); *Carlyle v. United States*, *Dep't of Army,* 674 F.2d 554, 556–57 (6th Cir. 1982) ("[W]hether or not to supervise [Army recruits] at the Hotel, and the extent of any such supervision, was a planning level, discretionary function."); *see also Zion v. United States*, 913 F. Supp. 2d 379, 388–89 (W.D. Ky. 2012) (holding that GSA's hiring and supervisory decisions were discretionary in nature). This conclusion is consistent with the precedent of our sister Circuits.[3]

Plaintiff stresses that the "court's analysis is improper because unconstitutional conduct does not fall within the discretionary function exception." *Appellant's Br.*at 16. But as noted by the district court: "Plaintiff's stance misses the mark. At issue here is whether those individuals at the FBI responsible for hiring and firing, and the training and supervision that occurs in

---

[3] *See, e.g.*, *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) (negligent hiring and supervision); *Bolduc v. United States*, 402 F.3d 50, 59–62 (1st Cir. 2005) (negligent supervision of FBI agents); *Suter v. United States*, 441 F.3d 306, 313 n.6 (4th Cir. 2006) (negligent hiring of FBI agents); *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995) (negligent hiring).

between, follow express and explicit mandates or whether they exercise judgment." *Snyder v. United States*, 990 F. Supp. 2d 818, 827 (S.D. Ohio 2014).

Because FBI hiring, supervision, training, and retention require policy judgments—the type that Congress intended to shield from tort liability—and because Plaintiff failed to allege the United States' nonconformance with any applicable regulations, we find that the district court lacked subject matter jurisdiction.

### B.    Motion to Dismiss for Failure to State a Claim

We review *de novo* the grant of a motion to dismiss for failure to state a claim. *Lambert v. Hartman*, 517 F.3d 433, 438–39 (6th Cir. 2008). To survive a 12(b)(6) motion, Plaintiff must plead facts sufficient to demonstrate that she is entitled to relief as a matter of law. *Z. Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 597 (6th Cir. 2014). This showing is made when the alleged facts, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint that merely states "[t]hreadbare recitals of the elements of a cause of action" does not meet the pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And when a complaint fails to allege a necessary element of the claim, it must be dismissed. *See id.*

#### 1.    False Arrest

Under Ohio law, a "false arrest claim is made by showing (1) the intentional detention of the person, and (2) the unlawfulness of the detention. *Harvey v. Republic Services of Ohio II, LLC*, 2009-Ohio-1343, ¶ 40 (Ohio Ct. App. 2009). Plaintiff fails on either prong.

Under the first element, the officer or agent must actually participate in the arrest to be liable. *Thompson v. Faddis*, 2007-Ohio-891, ¶17 (Ohio Ct. App. 2007); *see also Schulz v.*

*Gendregske*, 544 F. App'x 620, 625 (6th Cir. 2013) (granting an officer qualified immunity because this Court has "never held that an officer who is neither the arresting officer nor the proponent of the warrant can be liable for false arrest"). Thus, Plaintiff "must show that the official either actively participated in the alleged unconstitutional conduct or 'implicitly authorized, approved or knowingly acquiesced in the alleged unconstitutional conduct of an offending subordinate.'" *Scott v. City of Cleveland*, 555 F. Supp. 2d 890, 896 (N.D. Ohio 2008) (quoting *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003)). However, Plaintiff concedes that Giordano neither secured nor executed the arrest warrant and she alleges no facts suggesting that he requested or authorized the arrest. For these reasons alone, her claim must fail.

Assuming, *arguendo*, that Agent Giordano did participate in Plaintiff's arrest, the claim fails as a matter of law because an arrest made pursuant to a valid warrant is lawful. *Friedman v. United States*, 927 F.2d 259, 262–63 (6th Cir. 1991) ("An action for false arrest or imprisonment cannot stand when the imprisonment results from a judgment or order of a court of competent jurisdiction, unless such judgment or order is absolutely void."). Plaintiff's complaint includes no allegations that would render the arrest warrant "absolutely void."

Because no federal agent participated in the arrest, and because the warrant was not void, we affirm the district court's decision granting the United States' motion for failure to state a claim.

### 2. Assault & Battery

To succeed on an assault claim Plaintiff must allege (1) "a willful threat," or (2) an attempted offensive touching that reasonably places another "in fear of such contact." *Vasquez-Palafox*, 2013 U.S. Dist. LEXIS 51626, at *7 (N.D. Ohio April 10, 2013) (citing *Kaylor v.*

*Rankin*, 356 F. Supp.2d 839, 853 (N.D. Ohio 2005).[4] When an individual is arrested pursuant to a facially valid warrant, no assault or battery has occurred. *Hale v. Vance*, 267 F. Supp. 2d 725, 736 (S.D. Ohio 2003) (noting that "police officer[s] effectuating a stop . . . [are] privileged to make physical contact").

Plaintiff failed to state a claim because no federal officer participated in the arrest and the facts, as alleged, suggest no more contact with Plaintiff than would be privileged in the context of an officer effectuating an arrest and the booking procedures that followed.

### 3.      Negligent or Intentional Infliction of Emotional Distress

A complaint for negligent infliction of emotional distress must allege that "the plaintiff was placed in fear of physical consequences to his or her own person." *Heiner v. Moretuzzo*, 652 N.E.2d 664, 669 (Ohio 1995). This fear must be based on the threat of "actual physical peril." *Id.* We do not contest that Plaintiff suffered serious emotional distress. Based on the facts alleged, a lack of due diligence in the agent's and officer's investigation, which led to Plaintiff's mistaken arrest, is the actual and proximate cause of her anguish. But being fingerprinted, handcuffed, strip searched, and forced to take a DNA swab are typical, if not standard booking procedures. Thus, Plaintiff failed to state a claim for negligent infliction of emotional distress because she was not placed in "actual physical peril."

Likewise, Plaintiff's claim for intentional infliction of emotional distress cannot survive a 12(b)(6) motion because she neither alleges intentional nor extreme and outrageous conduct, both of which are necessary elements under Ohio law. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

---

[4] Ohio law has a separate tort for battery, which attaches civil liability to the actual act of offensive touching.

## II.     Claims Against Special Agent Giordano

This Court reviews a determination of qualified immunity *de novo*. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).

Plaintiff alleges violations of her constitutional rights under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Specifically, she alleges that Giordano violated her right to due process "by improperly conducting an unduly suggestive line–up which led to, *inter alia*, her arrest," and that the arrest warrant was not supported by probable cause in violation of the Fourth Amendment. *Appellant's Br.* at 29–30. Giordano is entitled to qualified immunity with respect to both claims.

### A.     Qualified Immunity Framework

Qualified immunity is "an immunity from suit," which relieves government actors from standing trial for civil liability resulting from tortious acts committed while performing discretionary functions. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "As long as [an official's] actions could reasonably have been thought consistent with the rights they are alleged to have violated," the immunity applies. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). To succeed on a *Bivens* claim, Plaintiff must show (1) that Giordano violated her constitutional rights, and (2) that the right in question was clearly established law at the time of her injury. *Saucier v. Katz*, 533 U.S. 194, 199 (2001). Significantly, Plaintiff must plead that Giordano, "through [*his*] *own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added).

### 1. Due Process

While it is true that use of a single photograph for a witness identification may be unduly suggestive, such a procedure is not inherently or presumptively unconstitutional. *United States v. Shields*, 415 F. App'x 692, 703 (6th Cir. 2011) (upholding the use of pre-trial identification with a single photograph where the informant "had ample opportunity to observe [the Defendant]" in prior settings). In fact, we have long held that the "unduly suggestive" inquiry requires this Court to look at the totality of the circumstances. *United States v. Causey*, 834 F.2d 1277, 1284–85 (6th Cir. 1987). Significantly, Giordano used this identification at an early stage of his investigation (which he eventually abandoned) and not to seek Plaintiff's arrest or prosecution. There is no precedent suggesting that such a use is unconstitutional. Thus, no clearly established right was violated and Giordano is entitled to qualified immunity.

### 2. False Arrest

As discussed above, Giordano did not participate in Plaintiff's arrest. The FBI closed its investigation four months prior to Plaintiff's arrest and she does not allege that Giordano took part in the CPD investigation or that he directed O'Brien to seek the arrest warrant. As we noted in *Gendregske*, it is not clearly established law that someone "who is neither the arresting officer nor the proponent of the warrant can be liable for false arrest." 544 F. App'x at 625. Giordano is entitled to qualified immunity on this basis alone.

Because Plaintiff failed to plead sufficient facts to suggest that Giordano violated her clearly established constitutional rights (or conspired to do so) her claim for punitive damages must also fail.

**III.    Claims Against Officer O'Brien and the City Of Cincinnati**

Absolute immunity and qualified immunity in the § 1983 context are reviewed *de novo*. *Meals v. City of Memphis*, 493 F.3d 720, 728 (6th Cir. 2007).

Plaintiff faults the district court for dismissing her Fourth Amendment false arrest claim against Officer O'Brien and her state law claims against O'Brien and the City of Cincinnati.  We find (1) that O'Brien is entitled to qualified immunity, as the facts pled are not sufficient to plausibly suggest a violation of any clearly established constitutional right, and (2) that O'Brien and the City of Cincinnati are entitled to absolute immunity with respect to the state law claims because Plaintiff failed to plead malicious intent or an applicable exception to the City's sovereign immunity.

**A.    Fourth Amendment Claims Against Officer O'Brien Pursuant to § 1983**

The qualified immunity analysis for a § 1983 suit is the same as for a *Bivens* claim. *Harlow v. Fitzgerald*, 457 U.S. 800, 809 (1982).  Thus, the question remains whether Plaintiff alleged sufficient facts to plausibly claim a violation of her *clearly established* constitutional right. *See Saucier*, 533 U.S. at 199.  "[I]n the case of the officer applying for a warrant a rule of qualified immunity . . . [gives] ample room for mistaken judgments." *Anderson*, 483 U.S. at 654 n.8 (internal quotation marks omitted).  Once qualified immunity has been established for the individual defendant, the municipality is also immune from suit. *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001).

Plaintiff alleges that her Fourth Amendment rights were violated because Defendant lacked probable cause to secure the warrant.  However, "[a]n arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest."

*Voyticky v. Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). To overcome this bar, Plaintiff must show that "the defendant intentionally misled the court or omitted material information in seeking the warrant." *Nerswick v. CSX Transp., Inc.*, 441 F. App'x 320, 322 (6th Cir. 2011) (internal quotation marks omitted). Absent this showing, an arrestee whose identity has been mistaken with another has no constitutional claim. *Cf. Fettes v. Hendershot*, 375 F. App'x 528, 532 (6th Cir. 2010) ("[I]n executing a presumptively valid arrest warrant, the police reasonably mistake a second person as being the individual named in the warrant and arrest him, the arrest of the second person does not offend the Constitution.").

Plaintiff does not allege that O'Brien intentionally misled the magistrate. Instead, she faults O'Brien's reliance on the FBI file in securing the warrant without performing any due diligence. We agree with the district court in that, the fact that O'Brien "did not 'double-check' the accuracy of the information within the FBI's file does not amount to a civil rights violation. At most, it might be tantamount to negligence, but "'negligence does not equate to a constitutional violation.'" *Snyder*, 990 F. Supp. 2d at 844 (quoting *Fettes*, 375 F. App'x at 532). Because O'Brien did not violate Plaintiff's clearly established constitutional right, he is entitled to qualified immunity, and thus, the City of Cincinnati is also immune.

**B.      State Law Claims Against O'Brien and the City of Cincinnati**

Pursuant to the Ohio Revised Code, the City of Cincinnati is immune from all state law claims arising out of the provision of police services. OHIO REV. CODE ANN. § 2744.01(C)(2)(a) and § 2744.02 (LexisNexis 2014). Pursuant to § 2744.03(A)(6) of the Code, Officer O'Brien is immune from suit unless (a) his "acts or omissions were manifestly outside the scope of [his] employment or official responsibilities"; (b) his "acts or omission were with malicious purpose, in bad faith, or in a wanton or reckless manner"; or (c) "[c]ivil liability is expressly imposed

upon [him] by a section of the Revised Code." Plaintiff argues that O'Brien is liable under the second exception. We find no allegations in the complaint to support that contention. Therefore, Plaintiff's Ohio tort law claims against O'Brien and the City also fail.

**CONCLUSION**

For the reasons stated in this opinion, we **AFFIRM** in full the district court's judgment**.**