LINDOW, Appellants,

v.

CITY OF NORTH ROYALTON et al., Appellees.

[Cite as *Lindow v. N. Royalton* (1995), 104 Ohio App.3d 152.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67615.

Decided May 30, 1995.

Thomas P. Aldrich III, for appellants.

Mazanec, Raskin & Ryder Co., L.P.A., and John T. McLandrich, for appellees.

*Brown, Bartunek & Worthing, John G. Salmon* and *Thomas Brown,* for appellee N. Royalton Fire Dept.

*Todd M. Raskin* and *Andrew M. Wargo,* for appellees city of N. Royalton and N. Royalton Police Dept.

*Thomas F. Greve,* Assistant Law Director, for city of North Royalton.

---

SPELLACY, Presiding Judge.

Plaintiffs-appellants Geraldine Lindow and her parents, Frank Lindow and Esther Lindow, filed an action in the Cuyahoga County Court of Common Pleas against defendants-appellees city of North Royalton ("city"), North Royalton Police Department ("Police Dept."), and the North Royalton Fire Department ("Fire Dept."). Defendant Southwest General Hospital was dismissed and is not a party to this appeal. The trial court granted the motion to dismiss filed by the city and the Police Dept., and granted the motion for summary judgment filed by the Fire Dept.

The complaint alleged that on June 12, 1993, the Lindows' next-door neighbor, John Wagner, placed a considerable quantity of new mulch on his gardens. The gardens are in close proximity to the Lindow property, and a strong chemical odor permeated the air. Geraldine Lindow has a history of chronic allergies and is extremely susceptible to substances in the air, including chemicals. Upon returning home in the evening, Geraldine immediately had an allergic reaction to the mulch. This reaction diminished as she entered the house, but reoccurred the next morning as she worked on her garden.

Geraldine filed a complaint with the Police Dept., and was later informed that the problem was a civil matter and not one for the police. That afternoon, while her parents were away from home, Geraldine again experienced the allergic reaction. Wagner was outside and they discussed the mulch. Wagner stated that he did not care what happened to her. As the reaction worsened, Geraldine returned to the house, and once again called the police.

Shortly thereafter two police officers arrived, along with three members of the Fire Dept.'s Emergency Medical Service ("EMS") team. Before entering the Lindow home, the policemen and the paramedics seemed to speak with Wagner. The two police officers then entered the Lindow home, followed by the EMS team. Geraldine wanted the police to resolve the difficulties with her neighbor, and she attempted to respond to their questions regarding her physical and mental health.

The complaint states:

"Then they all went outside. As they returned to the house, the EMS workers restrained Ms. Lindow physically, telling her they were taking her to Southwest General Hospital for evaluation. This restraint and transport and subsequent holding at Southwest General Hospital was completely against Ms. Lindow's wishes, and without her consent."

Geraldine was released from the hospital two hours later when her parents arrived.

When Geraldine's parents returned home, they found the doors to the house closed, but not locked, and Geraldine missing. A note had been left on the kitchen table stating that Geraldine had been taken to Southwest General Hospital for psychiatric evaluation, and instructing them to call the Police or Fire Dept. for further information. The complaint notes that the EMS report indicates that Geraldine had been arrested.

The complaint alleges that Geraldine did not consent to being taken to the hospital, to being restrained, to being detained at the hospital, or to leaving her home unattended and unlocked. She alleges that her civil rights were violated, that she had never been arrested, and that she has had no history of psychiatric problems. She states that now her record includes allegations of both an arrest and of psychiatric difficulties. The complaint prays for damages for pain and suffering, for an order compelling the police and fire departments to implement a program training their employees to recognize the difference between medical infirmities and psychiatric problems, and requiring the police and fire departments to expunge from their records any reference to an arrest, psychiatric treatment, or other incorrect statement concerning Geraldine.

There are no allegations in the complaint that the city, the Police Dept., or the Fire Dept. acted or failed to act in any manner other than in their official capacity. There are no allegations made against any individual person or officer. Nor does the complaint contain any allegations that any actions were taken by any person or officer which were outside the scope of employment or official responsibility, or with malicious purpose, in bad faith, or in a wanton or reckless manner.

The Fire Dept. filed three separate motions for summary judgment; the first two were overruled and the third was granted. Attached to the first motion filed November 8, 1993, is the affidavit of Fire Chief Michael Fabish. This affidavit states that the Fire Dept. is not a separate entity from the city, that the Fire Dept. operates the EMS service for the City, and that on June 13, 1993, the Fire Dept. received an emergency call from the dispatcher of the Police Dept. requesting assistance at the appellants' home. The affidavit further states that three firemen responded, that after spending an hour at the Lindow home they took Geraldine to Southwest General Hospital, and that Geraldine was transport-

ed at the direction of the police officers who were present. A copy of the EMS run report was authenticated by the affidavit and attached as evidence. The appellants filed a brief in opposition, but attached no evidence.

On March 2, 1994, the Fire Dept. filed its second motion for summary judgment. Attached as evidence was the affidavit of Allan Mitchell. He affirms that he is employed by the city as a fire fighter; that the Fire Dept. operates the EMS unit; that on June 13, 1993, the Fire Dept. received an emergency call for assistance from the Police Dept. requesting assistance at the Lindow home; that two police officers and two additional firemen went to the residence and spent an hour talking to Geraldine; that Geraldine told the police to arrest her neighbor for putting mulch on his yard; that while they were leaving the premises, Geraldine came out into the backyard and began screaming at them; that the police instructed them to take Geraldine to the hospital; that as they tried to restrain her, she picked up a rock and struck one of the firemen. Mitchell also affirmed that he contacted the psychiatric unit at Southwest General Hospital and advised them that Geraldine was being transported for evaluation. From them he received instructions that Geraldine should first be taken to the emergency room to be medically cleared. Mitchell authenticated the attached EMS run report.

Also attached to the motion for summary judgment are the affidavits of Clark Chillcott and Ronald Flowers, both police officers for the city. Officer Chillcott affirmed that on June 13, 1993, at approximately 10:15 a.m., he learned from Officer Flowers of Geraldine's complaint against Wagner. He contacted the city prosecutor for an opinion, and was told that there was no criminal liability, and that Wagner had the same right as any homeowner in that spreading of mulch was commonplace and lawful. After speaking to the attorney, Officer Chillcott contacted the Lindows. Geraldine was not at home, so he spoke with her father, Frank Lindow. Mr. Lindow stated that he would inform his daughter, and then stated that he did not understand why she had contacted the police, as he and Wagner had discussed the problem. Wagner had agreed to purchase a different mulch, and Mr. Lindow had agreed to pay for it.

Officer Chillcott affirmed that between 1:40 and 2:20 p.m. on June 13, 1993, he received four phone calls from Geraldine. When informed this was not a police matter, Geraldine was irate, abusive and threatening. On the third call, Officer Chillcott warned her that if she persisted in calling the police, he would charge her with disrupting public services or disorderly conduct. In the subsequent fourth telephone call, she threatened Wagner's life, and stated that if that did not work, she would kill herself. The officer became concerned that Geraldine was not mentally stable and proceeded to her home.

Upon arrival, Chillcott, Flowers, and the three EMS paramedics entered the house at Geraldine's invitation. During the interview they learned of her medical difficulties, and observed radical mood swings from passive and lucid to hostile and irrational. More than once Geraldine mentioned suicide as a remedy and made threats against Wagner. Officer Chillcott told Geraldine they were leaving and advised her to cease disrupting the police. She was warned that if she persisted, there would be no choice but to either arrest her or take her to the hospital for psychiatric analysis.

Officer Chillcott's affidavit corroborates that of Mitchell concerning Geraldine's reaction once the men left the house. He affirms that as they were walking to their vehicles, Geraldine came out onto the back porch and began to scream that if they left without doing something, she would either kill her neighbor or herself. At this time the decision was made to restrain her. During these efforts, Geraldine struck one of the paramedics with a rock. After she was restrained, she was transported. Before Chillcott left the Lindow residence, he left a handwritten note for Mr. and Mrs. Lindow and locked the back of the house. The affidavit of Patrolman Ronald Flowers corroborated that of Officer Chillcott.

Once more, the appellants failed to attach any evidence to the brief in opposition to the motion for summary judgment.

The third and final motion for summary judgment of the Fire Dept. was filed on June 3, 1994. Attached as evidence was the deposition transcript of John Wagner. The testimony corroborates the affidavits of fireman Allan Mitchell and of Officers Chillcott and Flowers. Once more the appellants filed a brief in opposition to which no evidence was attached.

The appellants set forth the following four assignments of error:

I

"The trial court erred in granting appellees-defendants city of North Royalton's and North Royalton Police Department's motions to dismiss."

II

"The trial court erred in not permitting full discovery before ruling on appellees-defendants city of North Royalton's and North Royalton Police Department's motions to dismiss."

III

"The trial court erred in granting appellee-defendant North Royalton Fire Department's motion for summary judgment."

IV

"The trial court erred in not determining appellant-plaintiffs' federal and state constitutional and civil rights were violated by appellees-defendants' actions."

The analysis of this case must begin with a review of the applicable statutes and case law.

The standard by which to review a motion to dismiss was set forth in *York v. Ohio State Highway Patrol* (1991), 60 Ohio St.3d 143, 573 N.E.2d 1063. The court held that in order for a court to grant a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle plaintiff to relief. It must be presumed that all allegations of the complaint are true, and all reasonable inference must be made in favor of the nonmoving party. It must also be remembered that the Civil Rules require only notice pleading.

A summary judgment is proper only when the tests set forth in Civ.R. 56 are present. In *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1132, the Supreme Court stated:

"Under Civ.R. 56, summary judgment is proper when '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138. Nevertheless, summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essentials of its claim. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus."

The Ohio legislature enacted R.C. 2744.01(C)(2), which provides that the provision or nonprovision of police, fire and emergency medical services is a governmental function. R.C. 2744.02(A)(1) states in part that a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision in connection with a governmental function.

In the motion to dismiss, the city and the Police Dept. state that they are immune pursuant to R.C. Chapter 2744. The Fire Dept. advanced the same

argument in its motion for summary judgment. The Fire Dept. also argues that it is not a separate entity from the city, and that the appellant may not maintain suit solely against the Fire Dept.

In the case *sub judice,* the trial court properly granted the motion to dismiss filed by the city and the Police Dept. The appellants failed to set forth any allegations in the complaint, when taken as true, which would entitle them to relief. There are no allegations that the police officers or the EMS team acted outside of their professional capacities, or performed any other function than a governmental one. There is no individual or John/Jane Doe listed in the caption, nor any allegations that any individual acted outside the scope of their authority, or acted with malicious purpose, in bad faith, or in a wanton or reckless manner, in violation of R.C. 2744.03(A)(6).

The appellant argues that had discovery been permitted, sufficient facts would have emerged which would have lead to relief. However, a motion to dismiss may be granted only when the facts alleged in the complaint are taken as true, and facts outside the pleadings may not be considered. The completion of discovery is not relevant to the granting of a motion to dismiss.

The Fire Dept.'s argument that the appellants may not maintain a suit against them in the absence of the city is supported by the Supreme Court's decision in *Wilson v. Stark Cty. Dept. of Human Serv.* (1994), 70 Ohio St.3d 450, 639 N.E.2d 105. The court held that in an action against the department of human services, the county is a real party in interest. The court held that where a county is immune under R.C. 2744.02 in its operation of a county department of human services, that immunity extends to the department of human services itself.

The *Wilson* court stated that departments of human services are the instrumentalities through which the political subdivisions carry out government functions. The court noted that save where R.C. 2744.02(B)(1), (3), (4) and (5) provide for specific exceptions, political subdivisions retain their cloak of immunity from lawsuits stemming from employees' negligent or reckless acts.

Like the city and the Police Dept., the Fire Dept. is immune from suit under R.C. Chapter 2744 for the reasons stated above. The Fire Dept. is not a separate entity, and the real party in interest is the city. Without the city as a party in the suit, no action against the Fire Dept. may be conducted. Since the city has properly been dismissed, so too must the Fire Dept.

Moreover, the Fire Dept. properly submitted its arguments in its motions for summary judgment, and filed ample documentary support of its version of the events of June 13, 1993. By contrast, the appellants produced absolutely no evidentiary material to support their claims. Since a motion for summary

judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial, *Wing, supra,* and the appellants failed to produce such evidence, the trial court did not err in granting the final motion for summary judgment filed by the Fire Dept.

The appellants have asserted that their civil rights were violated, but have failed to make sufficient allegations in their complaint, or provide any evidence of such violation in response to the motions for summary judgment, which would constitute an exception to the doctrine of sovereign immunity.

The appellants' assignments of error are not well taken.

*Judgment affirmed.*

NUGENT and NAHRA, JJ., concur.