[Cite as *Ferrell v. Ohio State Hwy. Patrol*, 2016-Ohio-5223.]

| | |
|---|---|
| BENJAMIN W. FERRELL | Case No. 2015-01041 |
| Plaintiff | Judge Patrick M. McGrath |
| v. | DECISION |
| OHIO STATE HIGHWAY PATROL | |
| Defendant | |

**{¶1}** Before the court for determination are three motions: (1) motion for judgment on the pleadings filed by defendant Ohio State Highway Patrol (OSHP) on March 21, 2016; (2) a motion to allow depositions filed by plaintiff Benjamin W. Ferrell on March 31, 2016; and (3) an unopposed motion for leave to file a reply to "Defendant's Memorandum Contra Plaintiff's Motion to Allow Depositions" filed by Ferrell on April 29, 2016 with a reply tendered with Ferrell's motion for leave.

**{¶2}** Upon review, the court grants OSHP's March 21, 2016 motion for judgment on the pleadings, denies Ferrell's March 31, 2016 motion to allow depositions, grants Ferrell's unopposed April 29, 2016 motion for leave to file a reply to OSHP's memorandum contra plaintiff's motion to allow depositions, and accepts the reply filed by Ferrell on April 29, 2016.

## I. Background

**{¶3}** Plaintiff Benjamin Ferrell sues OSHP, asserting that state troopers acted negligently with respect to him when they investigated a multi-vehicle collision. According to Ferrell, on December 20, 2014 at about 6:15 p.m., he was traveling southbound on Interstate 71 (I-71) in Ashland County, Ohio, when another driver—Dantoine Wright—pulled on to the interstate and the vehicle driven by Ferrell—a Chevrolet Equinox—struck Wright's vehicle. (First Amended Complaint at ¶ 7-9, 16.)

Ferrell maintains that another collision occurred moments later that involved his vehicle and other vehicles. (First Amended Complaint at ¶ 11.) According to Ferrell, after the collisions "the Ohio State Police responded, including, but not limited to, Officer Paul Green, Sergeants Bittinger and Bishop, and Troopers Marshall and Rawson," with Sgt. Bittinger arriving at about 6:22 p.m., and Trooper Rawson arriving at about 6:23 p.m. (First Amended Complaint at ¶ 12, 14).

{¶4} Ferrell contends that during the period when the troopers arrived at the scene until the scene was cleared at about 8:24 p.m., troopers "did not perform a physical inspection of the interstate area" to determine his location, despite the fact that a trooper discovered Ferrell's driver's license and wallet in the vehicle that he was operating. (First Amended Complaint at ¶ 13, 15-16.)

{¶5} Ferrell alleges that only after Sgt. Bishop and two other troopers returned to the highway patrol post "was a coordinated effort initiated to track down [him] after concerns were expressed by his girlfriend and family members." (First Amended Complaint at ¶ 17.) Ferrell maintains that according to a traffic crash report, Sgt. Bishop instructed Troopers Rawson and Marshall to return to the collision scene "to do a search and sweep of the collision scene looking for Mr. Ferrell." (First Amended Complaint at ¶ 19.) Ferrell asserts that, after returning to the scene at about 11:26 p.m., Trooper Rawson "approached the bridge north of the mile post 186 exit, climbed over a concrete abutment and down onto the rock pile beneath the bridge overpass" and, while he looked under the bridge, Trooper Rawson heard a groan and called out, asking if someone was there. (First Amended Complaint at ¶ 21-22.) After hearing another groan, Trooper Rawson shined his flashlight beneath the bridge, found Ferrell lying in mud and water, and lifted him from behind to remove him. (First Amended Complaint at ¶ 23-24.) Ferrell claims that EMS personnel responded to the scene at 11:45 p.m. and transported him to a hospital shortly after midnight on December 21, 2014. (First Amended Complaint at ¶ 27.)

## II. Relevant Procedural History

{¶6} On December 18, 2015, Ferrell filed a complaint in this court against OSHP. Three days later—on December 21, 2015—Ferrell filed an amended complaint in this court, presenting two causes of action: (1) "Count I"–"Gross Negligence/Wanton/Reckless Conduct of Defendant," (2) "Count II"—"Negligence of Defendant." (First Amended Complaint at 6, 7.) With this first amended complaint, Ferrell appended two exhibits (Exhibits A and B)—OSHP traffic crash reports concerning the events of December 20, 2014. In his amended complaint, Ferrell maintains that OSHP's failure to properly investigate his location in a timely manner constituted negligence and gross negligence and reckless and wanton misconduct. (First Amended Complaint at ¶ 32, 38.) He contends that OSHP owed common law duties to him—i.e., among other things, to properly and thoroughly investigate the collision scene and timely locate his whereabouts. (First Amended Complaint at ¶ 33, 39.) Ferrell asserts that he sustained injuries, including but not limited to, an epidural hematoma requiring a right craniotomy for hematoma evaluation, hypothermia, traumatic brain injury, various bone fractures, and deficits resulting from the incident. (First Amended Complaint at ¶ 29-30.) Ferrell seeks damages for lost wages in excess of $10,000, and medical expenses in excess of $58,000. Ferrell also seeks damages of $4,000,000 for "pain and suffering, past, present, and future," court costs and attorney fees, pre and post-judgment interest, and other relief for which the court determines that he may be entitled.

{¶7} Defendant OSHP has answered Ferrell's first amended complaint, denying his claims of negligence and gross negligence. On March 21, 2016, OSHP moved the court for judgment on the pleadings in accordance with Civ.R. 12(C). On March 31, 2016, in a combined filing, Ferrell responded to OSHP's Civ.R. 12(C) motion and moved the court to allow depositions. In response to Ferrell's motion to allow depositions, OSHP filed a memorandum in opposition. On April 29, 2016, Ferrell moved for leave to

file a reply to OSHP's memorandum in opposition to Ferrell's motion to allow depositions. OSHP has not opposed Ferrell's motion for leave to file a reply.

### III. Ohio State Highway Patrol's Civ.R. 12(C) Motion for Judgment on the Pleading and Ferrell's Response in Opposition

{¶8} In its Civ.R. 12(C) motion for judgment on the pleadings, OSHP urges that Ferrell's claims should be dismissed on the basis of public-duty immunity contained in R.C. 2743.02(A). OSHP asserts that, absent the existence of a statutorily-defined "special relationship," Ferrell may not surmount a defense to the application of public-duty immunity, which OSHP maintains includes, among other things, any action or omission of the state involving a law enforcement activity or emergency activity. OSHP contends that, based on the facts alleged in Ferrell's complaint, Ferrell cannot demonstrate a "special relationship" because he does not satisfy the requirements contained in R.C. 2743.02(A)(3)(b)(iii) (some form of direct contact between the state's agents and an injured party) and (iv) (an injured party's justifiable reliance on the state's affirmative undertaking). OSHP states, "It is clear from the facts alleged in the amended complaint that no employee of OSHP had contact with Ferrell; thus, as a matter of law he cannot establish the third element of the 'special relationship' exception to immunity. Furthermore, since Ferrell had no contact with troopers, he cannot demonstrate his reliance on any purported affirmative undertaking of the troopers. Thus, Ferrell cannot prove as a matter of law the fourth element of the 'special relationship' exception to immunity." (Defendant's Civ.R 12(C) Motion at 5.) OSHP maintains that Ferrell's first amended complaint should be dismissed in its entirety.

{¶9} In a filing that combines a response to OSHP's motion for judgment on the pleadings and a motion to allow depositions, Ferrell asserts that OSHP's Civ.R. 12(C) motion is improper and premature. He contends that he has requested depositions and discovery and he is within the statute of limitations to amend his pleadings in the future. Ferrell maintains that OSHP is not immune from liability, urging that OSHP's argument

disregards R.C. 2744.03 (defenses or immunities of a political subdivision and employee).  Relying on *Estate of Graves v. Circleville*, 124 Ohio St.3d 339, 2010-Ohio-168, 922 N.E.2d 201 (public-duty rule is not applicable in civil actions brought against employees of political subdivisions for wanton or reckless conduct), Ferrell asserts that OSHP is not immune from liability as the "allegations in Plaintiff's Complaint, along with the attached Exhibits incorporated therein, clearly set forth Plaintiff's case that the State's employees acted in a wanton and reckless manner during its investigation of the collision scene."  (Response at 6.)

{¶10} According to Ferrell, OSHP's argument concerning R.C. 2743.02 is flawed.  Ferrell maintains that R.C. 2744.03 pre-dates R.C. 2743.02 and "it is clear in R.C. 2744.03(A)(6)(b) the State had consented to be sued in situations when '[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton and reckless manner.'"  (Emphasis omitted.)  (Response at 7.)  Ferrell reasons that "since the State had previously consented to be sued, the portion of R.C. 2743.02 relied upon by Defendant has no applicability to this case."  (Response at 8.)  *See* R.C. 2743.02(A)(1) ("To the extent that the state has previously consented to be sued, this chapter has no applicability").

{¶11} Ferrell also challenges OSHP's application of R.C. 2743.02(A)(3)(b) (special relationship requirement) maintaining that the "wanton and reckless conduct exception is independent of any purported 'special relationship' requirement." (Response at 8.)  Ferrell urges that agents of OSHP "had direct contact and control of just about every item in Plaintiff's possession, except his body.  The State Police had direct contact with Plaintiff's vehicle, girlfriend, wallet, driver's license, insurance information, money and cell phone number."  (Response at 9.)

{¶12} In a reply memorandum, Ferrell clarifies contentions made in his response, stating: "Although Plaintiff did cite to Chapter 2744 and the case of *Estate of Graves* v. *Circleville,* (2010), 124 Ohio St.2d 339,345, 922 N.E. 2d 201, as the only published case

addressing public duty in the context of wanton and reckless conduct, Plaintiff also clearly relied on the waiver of immunity provisions R.C. Chapter 2743 [sic]. R.C. 2743.02 expressly provides that an action against an officer alleging the officer acted outside the scope of his employment, acted with malicious purpose, in bad bath or in a wanton or reckless manner must first be filed in the Court of Claims for an immunity determination and a determination whether the Courts of Common Pleas have jurisdiction over the civil action. R.C. 2743.02(F)." (Reply at 2.)

**{¶13}** Thus, based on the motions before the court, at issue are (1) whether, as a matter of law, OSHP is entitled to judgment on the pleadings based on public-duty immunity, and (2) whether discovery should proceed such that Ferrell may be permitted to depose OSHP employees.

### Discussion

### A.  Standard for Determining Civ.R. 12(C) Motion

**{¶14}** Civ.R. 12(C) permits motions for judgment on the pleadings, providing: "After the pleadings are closed but within such times as not to delay the trial, any party may move for judgment on the pleadings."  In *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996), the Supreme Court of Ohio discussed the standard for determining a Civ.R. 12(C) motion for judgment on the pleadings, stating: "Civ.R. 12(C) motions are specifically for resolving questions of law, *Peterson v. Teodosio* (1973), 34 Ohio St. 2d 161, 166, 63 Ohio Op. 2d 262, 264, 297 N.E.2d 113, 117." *Pontious* states at 570:

> a. Under Civ. R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. * * * Thus, Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law.

{¶15} In *Marok v. Ohio State Univ.*, 10th Dist. Franklin No. 07AP-921, 2008-Ohio-3170, ¶ 10, the Tenth District Court of Appeals observed, "A Civ.R. 12(C) motion for judgment on the pleadings has been characterized as a belated Civ.R. 12(B)(6) motion for failure to state a claim upon which relief can be granted." And in *S.E.A. Inc. v. Dunning-Lathrop & Assocs.*, 10th Dist. Franklin Nos. 03AP-1051, 03AP-1052, 2004 Ohio App. LEXIS 3734, at *11-12 (Aug. 5, 2004), the Tenth District Court of Appeals stated, "The Ohio Supreme Court has made it abundantly clear that a court's review of a Civ.R. 12(C) motion is limited exclusively to the allegations contained in the complaint and answer, and any writings properly attached to such and that a trial court may not consider any other evidentiary materials."

{¶16} Thus, as Ferrell has filed a first amended complaint and OSHP has answered this complaint, the court finds that OSHP's Civ.R. 12(C) motion is properly before the court. The court further finds that in accordance with *S.E.A. Incorporated* it may consider the allegations in Ferrell's first amended complaint and the exhibits that Ferrell appended to this complaint when determining OSHP's Civ.R. 12(C) motion for judgment on the pleadings.

### B. Immunity for Government Officials and Employees

{¶17} In *Conley v. Shearer*, 64 Ohio St.3d 284, 285, 595 N.E.2d 862 (1992), the Supreme Court of Ohio discussed the concept of immunity for government officials and employees, stating: "Historically, immunity for government officials and employees was derived from the legal fiction that '[t]he King could do no wrong, so any mistake in judgment on the part of the King's officials was an act for which the government would take no responsibility.' Civil Actions Against State Government, Its Divisions, Agencies and Officers (Winborne Ed.1982) 230, Section 6.2." *Conley* notes that the Ohio Supreme Court held many years ago that the state and its officers were immune from tort and other liability for wrongs committed by agents of the state when acting in their official capacity. *Id. Conley* explains that in 1912 in Section 16, Article I of the Ohio

Constitution, the state constitution was amended to allow actions to be brought against the state, but this provision "was 'not self-executing,' and constituted only an authorization for subsequent statutes in which the General Assembly could grant its specific consent to be sued." *Id.*

{¶18} As stated in *Conley*, "In 1975, the General Assembly enacted legislation creating the Court of Claims and specifying the forum and manner in which actions may be brought against the state and its officers and employees." *Id.* at 286. However, it was not until after 1975 that the General Assembly enacted provisions in R.C. Chapter 2744, which concerns actions brought against political subdivisions. *See* Am.Sub.H.B. No. 176, 141 Ohio Laws, Part I, 1699 (enacting R.C. 2744.01 to 2744.09) (effective November 20, 1985). *Compare* Am.Sub.H.B. No. 800, 135 Ohio Laws, Part II, 869 (enacting R.C. 2743.01 to 2743.20) (effective January 1, 1975). Ferrell's contention that "R.C. 2744.03 pre-dated R.C. 2743.02 and it is clear in R.C. 2744.03(A)(6)(b) the State had consented to be sued in situations when '[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in wanton and reckless manner'" (emphasis omitted) (Ferrell's Response to Judgment on the Pleadings at 7) is not persuasive.

{¶19} Additionally, Ferrell's reliance on R.C. 2744.03 and *Estate of Graves v. Circleville* is not persuasive as R.C. 2744.03 applies to a political subdivision—not the state—and *Graves* interprets the public-duty rule in civil actions brought against employees of a political subdivision for wanton or reckless conduct. *See Estate of Graves*, syllabus ("The public-duty rule adopted by this court in *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, is not applicable in civil actions brought against employees of political subdivisions for wanton or reckless conduct").

{¶20} In his response, Ferrell draws this court's attention to R.C. 2743.02(F), which provides:

> b. A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the

officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action. * * *.

{¶21} Notably, R.C. 2743.02(F) pertains to this court's jurisdiction. As the Ohio Supreme Court explained in *Ries v. Ohio State Univ. Med. Ctr.*, 137 Ohio St.3d 151, 2013-Ohio-4545, 998 N.E.2d 461, ¶ 20, "R.C. 2743.02(F) vests the Court of Claims with exclusive jurisdiction to determine whether a state employee is immune from personal liability in a civil action allowed by R.C. 9.86." *See* L.C.C.R. 4.1 (immunity determinations). In this case neither party through their motions challenges the jurisdiction of this court to adjudicate whether an employee of OSHP should be afforded immunity from personal liability. Neither have the parties sought an immunity determination in accordance with this court's local rule.

### C. Public Duty Doctrine

{¶22} In *Wallace v. Ohio Dep't of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 13, the Supreme Court of Ohio explained that the public-duty doctrine originated at English common law and "precludes a private party from sustaining a cause of action against a public officer for breach of a public duty. * * * In other words, a public entity owes a duty only to the general public when performing its functions and is therefore not liable for torts committed against an individual absent a special duty owed to the injured person." In *Wallace*, the Ohio Supreme Court examined the applicability of the public-duty rule to actions against the state and its agencies in this court. *Wallace* at ¶ 12. *Wallace* holds paragraph one of the syllabus: "The public-duty rule is incompatible with R.C. 2743.02(A)(1)'s express language requiring that the state's liability in the Court of Claims be determined 'in accordance

with the same rules of law applicable to suits between private parties.' In negligence suits against the state, the Court of Claims must determine the existence of a legal duty using conventional tort principles that would be applicable if the defendant were a private individual or entity."

{¶23} After *Wallace*, the General Assembly amended R.C. 2743.01 and 2743.02, adding divisions (3)(a) and (b) to R.C. 2743.02. Sub.H.B. No. 316, 150 Ohio Laws, Part IV, 5438, 5445-5446 (effective March 31, 2005). In accordance with the current version of R.C. 2743.02, the state generally enjoys immunity from civil liability with respect to the performance or nonperformance of a public duty. *See* R.C. 2743.02(A)(3). As used in R.C. Chapter 2743, a public duty "includes, but is not limited to, any statutory, regulatory, or assumed duty concerning any action or omission of the state involving any of the following: (a) Permitting, certifying, licensing, inspecting, *investigating*, supervising, regulating, auditing, monitoring, *law enforcement*, or emergency response activity * * *." (Emphasis added.) R.C. 2743.01(E)(1).

    c. R.C. 2743.02(A)(3) provides:

> (a) Except as provided in division (A)(3)(b) of this section, the state is immune from liability in any civil action or proceeding involving the performance or nonperformance of a public duty, including the performance or nonperformance of a public duty that is owed by the state in relation to any action of an individual who is committed to the custody of the state.

> (b) The state immunity provided in division (A)(3)(a) of this section does not apply to any action of the state under circumstances in which a special relationship can be established between the state and an injured party. *A special relationship under this division is demonstrated if all of the following elements exist*:

    d. An assumption by the state, by means of promises or actions, of an affirmative duty to act on behalf of the party who was allegedly injured;

    e. Knowledge on the part of the state's agents that inaction of the state could lead to harm;

    f. *Some form of direct contact between the state's agents and the injured party*;

    g. *The injured party's justifiable reliance on the state's affirmative undertaking.*

(Emphasis added.)

{¶24} It is manifest that according to R.C. 5503.01 the state highway patrol is a division within the Ohio department of public safety and state highway patrol troopers are authorized to investigate and report all motor vehicle accidents on all roads and highways outside of municipal corporations. *See* R.C. 553.01 and 5503.02. Given that the state highway patrol is a law enforcement entity and state troopers are authorized to investigate motor vehicle accidents, the court finds that public-duty immunity as codified in R.C. 2743.02(A)(3)(a) applies as Ferrell's complaint presents allegations against OSHP with respect to its troopers' investigation of a multi-vehicle collision on I-71 in Ashland County.

{¶25} Having determined that public-duty immunity applies in this case, to overcome public-duty immunity Ferrell is required pursuant to R.C. 2743.02(A)(3)(b) to demonstrate that a "special relationship," as defined in R.C. 2743.02(A)(3)(b), exists based on the allegations in his first amended complaint and its attachments.

{¶26} Upon review, after reviewing the first amended complaint and the attachments thereto with reasonable inferences drawn in Ferrell's favor, the court concludes that Ferrell has not demonstrated the existence of a statutorily-defined "special relationship." A review of Ferrell's first amended complaint discloses no allegation that he had any contact with agents of OSHP until he was located by Trooper Rawson. *See* First Amended Complaint at ¶ 23. And a review of Exhibits A and B that

are appended to Ferrell's first amended complaint supports a determination that state troopers had no contact with Ferrell until Trooper Rawson located him. For example, in the "Officer Narrative" section of a Traffic Crash Report contained in Exhibit A Trooper Paul Green reports,

> h. I made contact with a female that was sitting in the driver's seat of the Equinox. She stated that her boyfriend was driving when the crash occurred. The female in the driver's seat of the Equinox identified herself as Amira S. Mabjish, D.O.B. * * *. Ms. Mabjish stated that she did not witness the crash because, she was asleep in the passenger seat with the dog on her lap when the crash occurred. While speaking with Mabjish, she advised me that her boyfriend Benjamin Farrell [sic] was no longer at the scene. I asked her where he went. Mabjish stated that she was not sure. I spoke with Mabjish later, and she stated that she thought Mr. Ferrell had left the scene with the gentleman that was driving a maroon SUV, because she had last seen the two gentleman [sic] speaking. Miss Mabjish stated that the gentleman in the maroon SUV said he had witnessed the crash, and asked Ferrell to come with him.

{¶27} (Exhibit A at 7.) Trooper Green further notes, "I advised Wooster dispatch that [Ferrell] was gone on arrival, as was reported to me by Miss Mabjish. * * * I asked Wooster Dispatch to call Ashland Samaritan and see if Mr. Ferrell was there, being that he was missing from the crash scene. * * * I attempted to contact Mr. Ferrell on his cell phone by the number that Mabjish had provided. His phone went directly to voice mail." In his narrative Trooper Green indicated that he spoke by phone with Ferrell's father (Phillip Ferrell) and informed him that Mabjish had reported that his son had left the scene "with a maroon SUV. Mr. Phillip Ferrell stated that gentleman in the maroon SUV was taking Mr. Ferrell to complete a police report [sic]. I spoke with Mr. Ferrell a little later. He stated that he wished to file a missing persons report for his son, being that his son was missing." The Narrative Section further states, "Sgt. Bishop contacted the HUB regarding the incident and informed them of Benjamin Ferrell being missing. Sgt. Bishop requested that two units check the area of the crash scene to ensure that

Mr. Ferrell was not located anywhere near it. Tpr. Rawson and Tpr. Marshall traveled to check the area at approximately 2326 hours. Tpr. Rawson indicated over the radio that he had located a gentleman. * * * Tpr. Rawson indicated that he had pulled Mr. Ferrell out of the mud and onto the grassy bank."

{¶28} Additionally, a review of Trooper Rawson's narrative in Exhibit A supports a finding that until Trooper Rawson located Ferrell, agents of OSHP did not have contact with Ferrell. The Officer Narrative Section in Exhibit B also supports a finding that agents of OSHP did not have contact with Ferrell until Trooper Rawson located him. *See* Exhibit B at 11.

{¶29} Construing Ferrell's first amended complaint and attachments thereto in Ferrell's favor, the court finds that until Trooper Rawson discovered Ferrell, Ferrell did not have some form of direct contact between the state's agents and him as required by R.C. 2743.02(A)(3)(b)(iii) to establish a "special relationship" for purposes of R.C. 2743.02(A)(3)(b). And because, based on the first amended complaint and attachments thereto Ferrell did not have some form of direct contact with agents of OSHP before Trooper Rawson discovered him, it follows that Ferrell could not have had a justifiable reliance on the state's affirmative undertaking as required by R.C. 2743.02(A)(3)(b)(iv). And because Ferrell does not satisfy R.C. 2743.02(A)(3)(b)(iii) and (iv), it further follows that Ferrell does not satisfy the special relationship exception in R.C. 2743.02(A)(3)(b) as this provision provides that a "special relationship under this division is demonstrated *if all of the following elements exist.*" (Emphasis added.)

{¶30} Therefore, construing the material allegations in the complaint and attachments appended thereto, with all reasonable inferences to be drawn therefrom in favor of Ferrell, the court concludes that, as a matter of law, public-duty immunity contained in R.C. 2743.02(A)(3)(a) applies in this case and judgment on the pleadings in favor of OSHP is warranted.

**{¶31}** Having determined that, as a matter of law, OSHP is protected by public-duty immunity, the court determines that Ferrell's motion to allow depositions is moot. *See Black's Law Dictionary* 1161 (10th Ed. 2014) (defining moot as "[h]aving no practical significance; hypothetical or academic"). *See also Wiles v. Miller*, 2013-Ohio-3625, 3 N.E.3d 226, ¶ 44 (10th Dist.) (noting that "courts have concluded that no additional discovery is needed for a court to rule on a motion to dismiss or a motion for judgment on the pleadings"); *Lindow v. City of N. Royalton*, 104 Ohio App.3d 152, 159, 661 N.E.2d 253 (8th Dist.1995) ("The completion of discovery is not relevant to the granting of a motion to dismiss").

## V. <u>Conclusion</u>

**{¶32}** Wherefore, for reasons set forth above, the court determines that, based on his first amended complaint and attachments thereto Ferrell can prove no set of facts entitling him to relief beyond doubt after all factual allegations are presumed true and reasonable inferences are made in his favor. The court shall grant defendant OSHP's motion for judgment on the pleadings filed on March 21, 2016 and shall dismiss plaintiff's first amended complaint with prejudice. The court DENIES plaintiff's motion to allow depositions filed on March 31, 2016. The court GRANTS plaintiff's April 29, 2016 motion for leave to file a reply to OSHP's memorandum contra plaintiff's motion to allow depositions and accepts Ferrell's reply filed on April 29, 2016.

_____
PATRICK M. MCGRATH
Judge

[Cite as *Ferrell v. Ohio State Hwy. Patrol*, 2016-Ohio-5223.]

| | |
|---|---|
| BENJAMIN W. FERRELL | Case No. 2015-01041 |
| Plaintiff | Judge Patrick M. McGrath |
| v. | <u>JUDGMENT ENTRY</u> |
| OHIO STATE HIGHWAY PATROL | |
| Defendant | |

{¶33} For the reasons set forth in the decision filed concurrently herewith, the court determines that, based on his first amended complaint and attachments thereto, plaintiff can prove no set of facts entitling him to relief beyond doubt after all factual allegations are presumed true and reasonable inferences are made in his favor. The court GRANTS defendant's motion for judgment on the pleadings filed on March 21, 2016, and DISMISSES plaintiff's first amended complaint with prejudice. Judgment is rendered in favor of defendant. All previously scheduled events are VACATED. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

 

PATRICK M. MCGRATH
Judge

cc:

Roger N. Braden
7000 Houston Road, Suite 36
Florence, Kentucky 41042

Eric A. Walker
Velda K. Hofacker
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed June 1, 2016**
**Sent to S.C. Reporter 8/3/16**